**STATE of Tennessee, Appellee,**

v.

**William Douglas BROWN, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Jan. 13, 1988.

Permission to Appeal Denied by Supreme Court April 4, 1988.

Miriam Nabors Banks, Asst. Atty. Gen., Nashville, Joseph Baugh, Dist. Atty. Gen., Franklin, Ronald L. Davis, Asst. Dist. Atty. Gen., Franklin, for appellee.

E. Covington Johnston, Jr., Larry D. Drolsum, Franklin, for appellant.

## OPINION

DAUGHTREY, Judge.

The defendant, William Douglas Brown, was indicted for armed robbery, first degree (premeditated) murder, and felony murder. He was convicted of armed robbery and felony murder and he was sentenced to consecutive life sentences as a Range II, persistent offender guilty of committing an especially aggravated offense. His co-defendant, Thomas Lee Crouch, was convicted of premeditated, first degree murder and was sentenced to death.* On appeal, defendant Brown raises five issues, including challenges to (1) the sufficiency of the evidence; (2) the constitutionality of dual convictions for felony murder and the underlying felony; (3) the admission of two allegedly prejudicial photographs; (4) the propriety of additional jury instructions after deliberations had begun; and (5) the propriety of his consecutive life sentences. We find no reversible error and affirm Brown's convictions.

The evidence adduced at trial showed that Brown and Crouch went from Nashville to Williamson County one afternoon to burglarize a particular house. Their plan was thwarted when they discovered that someone was home. Subsequently, they picked up a hitchhiker, Jere Dorminy, with the intention of robbing him. The trio went to the Two Way Stop, a convenience store where Dorminy was a regular customer, and Dorminy went inside and purchased some beer. The market owner and one of the employees saw the trio arrive in a gold-colored car. According to these witnesses, the driver had blond, shoulder-length hair (Crouch) and the person seated in the middle had dark hair (Brown). They said that Dorminy was seated in the passenger seat.

Some time thereafter, Ronald Dutton spoke briefly to the defendants when they turned the car around in his driveway. Dutton, who identified Crouch from a photographic lineup, testified that he saw only two people in the car; the dark-haired man was driving and the blond was sitting in the passenger seat. Dutton's roommate, William Nicholson, testified that when he arrived home that afternoon around 5:00 p.m., he saw a man's body lying about three feet from the entrance to the drive-

---

* While Crouch's direct appeal of his conviction and death penalty was pending before the Tennessee Supreme Court, awaiting our opinion in this case, Crouch was murdered at the death row facility on December 25, 1987.

way. Nicholson and Dutton contacted the police.

The police investigation established that Jere Dorminy died from several blows to the head with a hard, straight object, and that he had a "defensive wound" on his hand. The police found no money or jewelry on the victim, but his wallet and its contents were found scattered in a nearby creek bed.

Danny Stewart and James Stewart, mechanics at Big J.J.'s Auto Shop in Nashville, testified that Crouch and Brown arrived at the auto repair garage at about 5:00 or 5:30 p.m. Crouch was driving and Brown was sitting in the passenger seat. Crouch, who was not wearing a shirt, told the Stewarts that he had robbed a man and then hit him in the head with a crowbar. Crouch showed them blood specks on his chest and claimed that it was the victim's blood. Both Stewarts observed blood on the passenger side of Crouch's car.

Defendant Brown told Danny Stewart that he was driving when Crouch attacked the victim. Brown also told Stewart that he was afraid Crouch was going to turn on him after hitting the victim.

James Stewart testified that he saw Crouch throw the victim's keys onto the roof of the garage. He said that Crouch, who had the victim's wedding ring, and Brown, who had the victim's watch, tried to sell him these items. Stewart declined but saw Brown sell the watch to a customer at the garage.

The police recovered the victim's keys from the roof of the garage; the victim's ring from a pawn shop where Crouch had left it; and the victim's watch and the crowbar-murder weapon from a field near the site where the victim's body was discovered.

### I.

■ In challenging the sufficiency of the evidence, defendant Brown insists that the proof is inadequate to show that the murder occurred in the perpetration of the robbery. Brown claims that the evidence shows that Crouch killed the victim after

the robbery was accomplished. Brown contends that the murder was collateral to the robbery and that he should not be punished for a crime in which he had no intent and played no part.

In *Farmer v. State,* 201 Tenn. 107, 296 S.W.2d 879, 883 (1956), the Supreme Court stated that to sustain a conviction for felony murder, the murder must have been done in pursuance of the specified felony and must not be merely collateral to the unlawful act. In other words, "[t]he killing must have had an intimate relation and close connection with the felony and not be separate, distinct, and independent from it …". 296 S.W.2d at 883. In *State v. Hopper,* 695 S.W.2d 530 (Tenn.Crim.App.1985), this court held that the killing of a police officer during a high-speed chase immediately after a robbery was sufficient to sustain a conviction for felony murder. The court concluded that because the murder occurred during the robbers' flight from the scene of the robbery and because their flight was "part and parcel" of the robbery event, the murder occurred in the perpetration of the robbery. 695 S.W.2d at 535–536.

The evidence presented at trial clearly shows that Brown and Crouch intended to and did rob the victim. In addition to telling both Danny and James Stewart that they picked up the victim in order to rob him, both defendants were in possession of the victim's belongings after the killing. The evidence of defendant Brown's involvement in the robbery is overwhelming.

The best evidence bearing directly on the issue of whether the killing was pursuant or collateral to the robbery consists of defendant Crouch's own statements concerning why he killed the victim. According to Danny Stewart, Crouch said that he killed Dorminy because "he (Dorminy) was trying to fight back, you know, when he (Crouch) was robbing him, so he just knocked him in the, you know…." Crouch also told Danny Stewart that he was glad he had killed Dorminy because that prevented him from being identified. James Stewart testified that Crouch told him that the victim only had six dollars and that "[a] son of a bitch

ain't got but six dollars don't deserve to live no way."

Steve McNeil, an inmate who was incarcerated with defendant Brown, testified that Brown told him that he (Brown) took the victim's wallet and jewelry. Brown also told McNeil that he and Crouch were angry that the victim only had a small amount of money and that they killed him so that he could not testify against them.

The evidence clearly shows that defendant Brown was a willing and active participant in the robbery and as such, he became accountable for all of the consequences flowing from the robbery. *See State v. Hopper,* 695 S.W.2d at 535. The proof shows that the defendants killed the victim because they were angry that he had only a small amount of money and because they believed that his death would prevent them from being identified as the robbers. The fact that the murder occurred after the robbery was completed does not make the murder collateral to the robbery. The jury reasonably could conclude, as the verdict shows it did, that the murder was accomplished in order to prevent identification of the defendants by the victim. When measured by the standard of Rule 13(e), Tennessee Rules of Appellate Procedure, the evidence is sufficient to support the jury's conclusion that the murder was connected closely with the robbery, that defendant Brown intended to rob the victim, and that Brown was therefore responsible for the resulting death.

## II.

■ The defendant contends that his dual convictions for felony-murder and armed robbery violate the protections afforded by the double jeopardy clause. This issue has been conclusively decided against the defendant by the Tennessee Supreme Court. *See State v. Blackburn,* 694 S.W. 2d 934 (Tenn.1984).

## III.

■ Defendant Brown argues that the trial judge erred in admitting two color photographs of the victim. The defendant objected to the admission of the photographs on the ground that they were irrelevant insofar as the medical experts could explain the extent of the wounds. On appeal, the defendant argues that the state introduced the photographs and passed them to the jury on four different occasions in order to inflame the jury and thereby secure a stiffer penalty.

We have reviewed the challenged photographs under the standard set forth in *State v. Banks,* 564 S.W.2d 947 (Tenn. 1978), and we conclude that no reversible error occurred as a result of their admission. One photograph shows a side view of the victim lying on the ground. This picture shows a long, rectangular-shaped gash in the side of his skull and a small amount of blood in and around the wound. The second photograph shows a hand holding a pen and pointing to brain matter, also small in amount, on the ground near the victim. Although the photographs are unpleasant insofar as they evoke images of the victim's violent death, neither photograph is particularly horrifying or gruesome.

In *Banks,* the Supreme Court adopted Rule 403, Federal Rules of Evidence, which allows for the admission of relevant evidence when the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice. 564 S.W.2d at 951. The court noted that in a first degree murder prosecution, in which premeditation, deliberation, and malice are essential elements, photographic evidence may shed light on the brutality of the attack and provide evidence of a willful intent to kill. 564 S.W.2d at 950.

The photographs of the victim are relevant evidence in this case because the defendants were charged with first degree murder and the photographs showing the extent of the injuries bear upon the issue of deliberation. Furthermore, the state sought to show that a crowbar, taken from J.J.'s Auto Shop and found in the vicinity of the murder scene, was the murder weapon. The photograph showing the victim's head injury was relevant to this issue because it shows a long, rectangular-shaped wound that the pathologist described as being made by a hard, straight object.

We are unpersuaded by defendant Brown's argument that the medical testimony was sufficient to explain the injuries. The photographs supplemented the medical explanation to give the jury a better understanding of the type of wound inflicted and the manner in which it was inflicted. *See State v. Banks*, 564 S.W.2d at 952. In light of our finding that the photographs were relevant, that they were not particularly gruesome, and that their probative value clearly outweighed the danger of prejudice, we conclude that the trial judge did not abuse his discretion in admitting the photographs. *See Banks*, 564 S.W.2d at 949.

## IV.

■ Defendant Brown contends that the supplemental jury instruction given in response to questions raised by the jury was incomplete and erroneous. After deliberating for some time, the jury returned to court and asked for clarification on the portion of the original charge involving the application of the law of aiding and abetting and constructive presence to the felony-murder count. After some discussion with the attorneys outside of the jury's presence, the trial judge asked the jury to clarify its request. In clarifying its question for the trial judge, the jury stated its understanding of the facts as follows:

> "... he was definitely involved in an illegal act but yet he was not involved in the murder and he did not—he did not aid in the murder specifically. He was aiding in the illegal situation that was taking place but not in the actual taking of the life."

The trial judge rephrased the question as follows:

> The question is if one of the defendants was aiding and abetting in the felony, which is the foundation of felony murder, but was not aiding in the murder itself, would he be guilty of felony murder.

The jury agreed that the trial judge accurately had restated the question pertaining to aiding and abetting. The judge then instructed the jury that "if you find beyond a reasonable doubt that a defendant was aiding and abetting in the felony, which is the foundation of the charge of felony murder, then he would be guilty of felony murder itself." Following this instruction, the jury foreman told the trial judge that he had answered the question and that no further instructions on the application of constructive presence to the felony murder charge were necessary.

Defendant Brown contends that the supplemental instruction is erroneous because it did not include a complete rereading of the aiding and abetting instruction. Specifically, the defendant argues that the portion of the aiding and abetting pattern jury instruction concerning constructive presence should have been included in the supplemental charge. This instruction includes a statement, emphasized by defendant Brown, that "[t]he defendant must have had knowledge of the crime being committed and an intent to aid and abet." *See* Tennessee Pattern Jury Instructions 3.02. Although not explicitly stated, the defendant appears to be arguing that the supplemental instruction should have informed the jury that he must have known that Crouch intended to kill the victim and that he was ready, willing, and able to assist Crouch in the murder. In other words, Brown implies that, in order to be found guilty of felony murder, the jury must have concluded that he intended to cause or assist in causing the victim's death.

■ This is not a correct statement of the law. When one enters into a scheme with another to commit one of the felonies enumerated in TCA § 39–2–202 and death ensues, both defendants are responsible for the death, regardless of who actually committed the murder and whether the killing was specifically contemplated by the other. *See Dupes v. State*, 209 Tenn. 506, 354 S.W.2d 453, 456 (1962).

The trial judge fully instructed the jury on all of the applicable law, including a charge on aiding and abetting and constructive presence. When the jury returned to court with a specific question, the trial judge correctly answered the question,

apparently to the jury's satisfaction. A reading of the transcript suggests that the jury's question arose because the aiding and abetting instruction does not explain which crime, the underlying felony or the murder, the defendant must have intended in the felony murder context. As previously stated, as long as the defendant intended to commit the underlying felony (in this case, robbery) and death resulted in the perpetration of, or attempt to perpetrate, the underlying felony, the defendant is responsible for the murder, regardless of whether he intended for the victim to die or participated in the act of murder.

The facts clearly support the jury's conclusion, as shown by the verdict, that Brown intended to rob the victim but did not share Crouch's intent to kill. Insofar as the jury sought clarification of a narrow issue, the trial judge correctly answered the inquiry. We conclude that the facts amply support the verdict and that no error occurred as a result of the supplemental instruction.

## V.

█ Finally, defendant Brown contends that the imposition of consecutive life sentences for felony murder and armed robbery is excessive under the facts and not supported by clear evidence of legislative intent. We are not able to review this question, however, because the record does not include a transcript of the armed robbery sentencing hearing. In the absence of a transcript to review issues raised on appeal, we must assume that the evidence fully supports the actions of the trial judge. *See* Rule 13(c), Tennessee Rules of Appellate Procedure; *State v. Hopper*, 695 S.W. 2d 530, 537–538 (Tenn.Crim.App.1985).

For the foregoing reasons, the defendants' convictions for armed robbery and murder in the first degree are affirmed.

DUNCAN, P.J., and JONES, J., concur.