IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
FEBRUARY 2000 SESSION

## STATE OF TENNESSEE, v. ANTONIO BREWSTER.

**Direct Appeal from the Criminal Court for Davidson County**
**No. 96-D-1897     J. Randall Wyatt, Jr., Judge**

---

**No. M1999-00989-CCA-R3-CD - Decided May 5, 2000**

---

Defendant was convicted in the Criminal Court, Davidson County, Wyatt, Randall J., of felony murder in the perpetration of a robbery, attempted aggravated robbery, aggravated robbery, and two counts of attempted first-degree murder. The defendant appealed. The Court of Criminal Appeals, Smith J., held that: (1) the trial court did not err in denying the defendant's motion to suppress his statement; (2) there was sufficient evidence that the defendant murdered a bystander in the perpetration of a robbery to support conviction for felony murder; and (3) the defendant was not denied the effective assistance of counsel at trial.

Affirmed.

**T.R.A.P. 3 Appeal as of Right; Judgment of the Criminal Court of Davidson County is Affirmed.**

JUDGE JERRY L. SMITH, delivered the opinion of the court, in which JUDGE DAVID G. HAYES, and JUDGE NORMA MCGEE OGLE, joined.

R.N. (Bo) Taylor, Goodlettsville, Tennessee for the appellant Antonio Brewster.

Paul G. Summers, Attorney General and Reporter, Lucian D. Geise, Assistant Attorney General; Victor S. Johnson, District Attorney General and Thomas B. Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Antonio Brewster, was indicted for felony murder, attempted aggravated robbery, aggravated robbery, and two counts of attempted first-degree murder. Following a suppression hearing, the trial court denied the defendant's motion to suppress his statement. After a jury trial, the defendant was convicted on all counts as charged. Then, following a sentencing hearing, the jury sentenced the defendant to life without parole for the felony murder, and the trial court sentenced the defendant to five (5) years incarceration for attempted aggravated burglary, ten (10) years for aggravated burglary, both to be served concurrently with the life sentence. The court also sentenced the defendant to twenty-two years for each count of attempted first-degree murder, but ordered each

twenty-two (22) year sentence to be served consecutively to each other and to the life sentence, thus giving the defendant a total effective sentence of life without parole plus forty-four (44) years. After failing to timely file a motion for new trial, the defendant filed a motion to allow the late filing for a motion for new trial. The trial court denied that motion, but appointed new appellate counsel to represent the defendant. The defendant then filed a post-conviction petition seeking a delayed appeal. See Tenn. Code Ann. § 40-30-213. The trial court granted the defendant permission to seek a delayed appeal, and the defendant filed a motion for new trial.

After a hearing on the motion for new trial, the trial court modified the defendant's sentence so that all of his sentences would be served concurrently, but otherwise denied the motion. This appeal raises the following issues:

1. Whether the trial court should have suppressed the defendant's statement;
2. Whether the evidence was sufficient to sustain a conviction for felony murder; and
3. Whether the defendant was denied the effective assistance of counsel.

After a thorough review of the record, we affirm the judgment of the trial court.

## FACTUAL BACKGROUND

On Saturday, August 17, 1996, at about 9:30 a.m., the defendant and his accomplice, James Grant, entered a Hooters restaurant in Nashville armed with nine-millimeter pistols. Both men had partially masked faces. The defendant was tall, while Mr. Grant was shorter and stockier. Several employees saw the two men after they entered. The defendant asked one of the employees where the manager was, and the employee replied that the manager had gone to the bank. The two assailants then directed all of the employees inside a walk-in cooler. After the employees went in the cooler, between $11.00 and $14.00 was taken from a table near the manager's office.

The manager, Fred Washington, returned from the bank about 9:45 a.m. and, after he entered the restaurant, saw one of the assailants holding a gun. Mr. Washington immediately attempted to flee out the front door of the restaurant, and the assailant shot Mr. Washington twice, once in the right leg and once in the left side. Mr. Washington managed to run into the parking lot, but the assailant shot him once again in the leg after Mr. Washington ran outside.

Just before Mr. Washington was chased outside, Nathan Orton drove into the Hooters parking lot in his pickup truck with Gregory Crews as a passenger. Mr. Orton parked the truck briefly to try to determine whether the restaurant was open for business. After they parked, Mr. Orton saw a man with a gun chasing another man out of the restaurant into the parking lot and shoot him. Mr. Crews told Mr. Orton to drive away, and Mr. Orton tried to do so. However, Mr. Orton was unable to put the truck into gear, and they did not move. After shooting Mr. Washington, the assailant turned his attention to the parked truck and started shooting into the passenger compartment. Although a bullet grazed Mr. Orton's back, Mr. Orton dove out of the driver's door and ran away. Mr. Crews was not able to escape. He was shot to death inside the truck.

Meanwhile, across the street, Charles Coss, the manager of a motel, witnessed the events unfolding at Hooters. He saw two men leaving the restaurant chasing other people. He saw the larger of the two men shooting at a man he was chasing, and he saw the man who was being chased fall to the ground. Then Mr. Coss saw the man who had been shooting turn and begin to fire into Mr. Orton's truck. Finally, he saw Mr. Orton run across the parking lot and the assailant shooting at Mr. Orton as he ran.

When Mr. Orton fled, he went to a nearby Waffle House restaurant and yelled for help. Two restaurant patrons, Rachel Johnson and her fiancé, Chance Blackwell, heard Mr. Orton say that his friend had been shot. Ms. Johnson called 911 on her mobile telephone. Then Ms. Johnson and Mr. Blackwell saw a cream-colored Chevrolet Caprice leave the parking lot with its tires squealing. They decided to try to follow the vehicle in Ms. Johnson's truck. Although they momentarily lost sight of the Caprice when it turned into an apartment complex, they regained visual contact with the car and maintained it until the car stopped at a pay phone. Police apprehended the driver of the Caprice, Lane Locke, at the pay phone.

When Mr. Locke had pulled into the apartment complex, the defendant and Mr. Grant got out of his car, and into another. From there, they drove to Mark Springer's house. Mr. Springer, a friend of Mr. Grant's, then drove the two men to meet Jason Harrington, another friend, in Murfreesboro. From there, the defendant, Mr. Grant, and Mr. Harrington all went to Mr. Harrington's house. There, Mr. Harrington overheard the defendant and Mr. Grant talking, and one of them said that "they had some heat on them and needed to lay low for a little while." He also overheard the men complaining that Lane Locke "wasn't in the right place at the right time or he'd parked the car in the wrong place."

That evening, the defendant, Mr. Grant and Mr. Harrington watched the evening news, and saw a story about the shooting earlier that day. After the news reported that Mr. Locke had been arrested and was cooperating with authorities, the defendant and Mr. Grant asked Mr. Harrington to drive them to Florida. Mr. Harrington agreed, and began driving them south that night. However, Mr. Harrington convinced the defendant and Mr. Grant to stop for the night in Marion County, Tennessee, and stay in a hotel until the next day. The next day, Mr. Harrington called police and told them where the defendant and Mr. Grant were.

Police apprehended the defendant and Mr. Grant at the hotel later that day. After police took him into custody, the defendant waived his Miranda rights and gave a statement in which he admitted attempting to rob the restaurant. He also admitted shooting Mr. Washington, but denied shooting into Mr. Orton's truck.

Police recovered a Baretta nine-millimeter pistol from Mark Springer's car, and a Glock nine-millimeter from a friend of Mr. Springer. Investigators found a total of sixteen (16) shell casings, six (6) bullets, and two (2) bullet fragments at the crime scene. A ballistics expert determined that all sixteen casings were fired from the Glock nine-millimeter, and that all six bullets could have been fired from that gun, but, in any event, could not have been fired from the Baretta. The bullet fragments could not be analyzed.

## SUPPRESSION OF DEFENDANT'S STATEMENT

The defendant first claims that the trial court erred when it denied his motion to suppress his statement. Specifically, he claims that he asked for an attorney several times but the police refused to honor his invocation of his right to counsel. An appellate court should uphold a trial court's decision on a motion to suppress, unless the evidence in the record preponderates against the finding. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). "Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. The party prevailing in the trial court is entitled to the strongest

legitimate view of the evidence, as well as all reasonable and legitimate inferences that may be drawn from the evidence. Id.

In this case, Detective Larry Flair, the Police Officer who questioned the defendant, testified at the suppression hearing that the defendant never asked for an attorney during questioning, that the defendant voluntarily waived his Miranda rights, and that he voluntarily confessed. On cross-examination, the Detective denied allegations that the defendant had asked for an attorney before he gave his statement. The defendant then testified that he had asked for an attorney, but that the police refused to honor his request. The trial court noted that the suppression hearing turned on the issue of the witness' credibility, and apparently credited Detective Flair's testimony over that of the defendant.

Although we do not question the trial court's credibility determination, the entire record may be considered on appeal. "[I]n evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998). In this case, another detective contradicted Detective Flair following the trial. At the sentencing hearing, Detective Daniel Whitehurst, who was also present when the defendant gave his taped statement, testified that the defendant had, in fact, asked for an attorney before he gave his statement to Detective Flair. Specifically, Detective Whitehurst testified that the defendant said that he was willing to make a statement, but that he would rather talk to an attorney first. The detective also testified that immediately thereafter the defendant stated "no, I'll do it now; it's going to come out anyway."

In order for an accused to invoke his Fifth Amendment right to counsel, that invocation must be clear and unequivocal. Davis v. United States, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994); State v. Huddleston, 924 S.W.2d 666 (Tenn.1996). This "clear articulation rule" mandates that when a suspect clearly requests an attorney, no further questioning may occur until an attorney has been made available or the suspect reinitiates the conversation. Davis, 512 U.S. at 458. However, if the suspect's request for an attorney is ambiguous, then police may continue the questioning. Id. at 461-62. In order to determine whether the suspect has clearly articulated his desire to consult with an attorney, the Supreme Court employed the objective standard of whether a reasonable police officer under the circumstances would know that the suspect wanted to cease questioning. Id. at 458.

Thus, even if the defendant did initially request an attorney before making a statement, the statement is nevertheless admissible in evidence, because the defendant's statement that he wanted an attorney was followed "in the same breath" with a statement that he did not want an attorney. That is not the type of "unequivocal" invocation of the defendant's right to counsel envisioned by the Davis Court. See State v. James Clayton Young, No. 01C01-9605-CC-00208, 1998 WL 258466, *12 (Tenn. Crim. App., May 22 1998 at Nashville)(holding that defendant's statement: "I'm sorry, I'm just wondering if I should have a lawyer," made five minutes into custodial interview, was not clear enough to unequivocally invoke the defendant's fifth amendment right to counsel under Davis).
This issue is without merit.

## SUFFICIENCY

The defendant next asserts that the evidence adduced at trial was insufficient to support a first-degree felony murder conviction. When the sufficiency of the evidence is challenged, the

standard for review by an appellate court is whether, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); State v. Burns, 979 S.W.2d 276, 286-87 (Tenn. 1998); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). In determining the sufficiency of the evidence, this Court does not reweigh the evidence, see id., or substitute its inferences for those drawn by the trier of fact. See Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (Tenn. 1956). A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. See Burns, 979 S.W.2d at 287; State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the appellant bears the burden of proving that the evidence is insufficient to support the jury verdict. See State v. Pike, 978 S.W.2d 904, 914 (Tenn. 1998); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The statute under which the defendant was convicted defines felony murder, in relevant part, as "a killing of another committed in the perpetration of, or attempt to perpetrate any . . . robbery . . . ." Tenn. Code Ann. § 39-13-202(a)(2). The statute also provides "[n]o culpable mental state is required for conviction [for felony murder] except the intent to commit the [underlying felony]." Id. § 39-13-202(b). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Id. § 39-13-401. Thus, the evidence was sufficient to convict the defendant if the state proved that the defendant intended to commit a theft, and did so or attempted to do so, by putting the victim of the theft in fear, and that the defendant killed a person in the perpetration of, or the attempt to perpetrate that theft.

In this case, the defendant and an accomplice entered a closed restaurant early in the morning armed with pistols and asked where the manager was. After employees told the defendant and his accomplice that the manager had gone to the bank, the defendant locked several employees in a cooler. The defendant and his accomplice then took tip money that was lying on one of the tables in the restaurant. When the manager returned, the defendant shot at the manager and chased him out of the restaurant and into the parking lot. The defendant shot the manager several times, and then began to fire at the possible eyewitnesses parked outside the restaurant. One of the occupants of the truck was killed by the defendant's gunshots while the other occupant escaped. The defendant and his accomplice then fled. We find this evidence more than sufficient to convict the defendant of first-degree felony murder. See State v. Lee, 969 S.W.2d 414, 416 (Tenn. Crim. App.1997) (holding that where victim was killed in a collision that followed a high-speed chase as defendant fled from the scene of a robbery, the homicide occurred in the furtherance of the robbery; flight from the scene of a crime is an integral part of the crime); see also State v. Brown, 756 S.W.2d 700, 702-03 (Tenn. Crim. App.1988) (stating that the fact that robbery was complete before the victim was killed did not make the murder "collateral" to the robbery where defendant picked up the victim with the intent of robbing him and killed him to prevent identification).
This issue has no merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the

Tennessee Constitution guarantee a criminally accused the right to representation by counsel. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn.1975); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App.1998). The United States Supreme Court and the Tennessee Supreme Court have both recognized that the right to such representation encompasses the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Baxter, 523 S.W.2d at 936.

The overall standard by which effective assistance of counsel is judged is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. Two components must be considered: first, a defendant must show that counsel's performance was deficient in some way; second, a defendant must show that the deficient performance actually prejudiced the defense. Id. at 687; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996). A defendant must establish both prongs of the test; failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on an ineffective assistance claim. Goad, 938 S.W.2d at 370.

Under Tenn. Code Ann. § 40-30-210(f), a post-conviction petitioner seeking relief for constitutional claims is required to prove the allegations "by clear and convincing evidence." Although, in this instance, the claim of ineffective assistance of counsel was raised in the motion for a new trial, the same standard applies. State v. Burns, 6 S.W.3d 453. Thus, the burden is on the defendant to prove that his trial counsel was ineffective by clear and convincing evidence.

In this case, the defendant first claims that his trial counsel was ineffective (1) for only meeting with the defendant on five (5) or six (6) occasions before trial, and for only spending about thirty minutes with the defendant on each occasion; (2) for failing to investigate the scene of the defendant's arrest and interrogation; (3) for failing to investigate the ballistics evidence in the case; (4) for failing to offer a defense at trial; and (5) for failing to present an adequate defense during the defendant's sentencing hearing.

At the hearing on the motion for a new trial, the only witness was the defendant's trial attorney, Greg Galloway. Mr. Galloway testified that he met with his client more than five or six times before trial, and estimated that he spent "at least" thirty (30) minutes per visit with the defendant. He also stated that he did not go to Jasper, Tennessee to investigate the scene of the defendant's arrest and statement, but stated that he chose not to go because although the defendant gave his statement in Jasper, the police involved were from Davidson County. Thus, Mr. Galloway did not find the scene of the defendant's arrest relevant. Mr. Galloway admitted that he should have investigated the ballistics evidence more thoroughly before trial, but that he did not because he was confused about the nature of the evidence. Although the defendant did not inquire about Mr. Galloway's failure to offer a defense, Mr. Galloway stated that the defendant made it clear that he did not want to testify. Finally, the defendant did not inquire about Mr. Galloway's adequacy at the sentencing hearing. However, on cross-examination, Mr. Galloway stated that although he contacted members of the defendant's family, they would not attend the trial.

The record reflects that the defendant completely failed to show any prejudice resulting from any claimed deficiency. Indeed, although Mr. Galloway admitted that he should have investigated the ballistics evidence more carefully, the defendant has not shown how a more thorough ballistics investigation would have aided him at trial. Furthermore, he did not present the testimony of any

uncalled witnesses or otherwise present any evidence that Mr. Galloway's alleged deficiencies worked to the defendant's actual prejudice.  See Scott v. State, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996).

This issue has no merit.

Accordingly, the judgment of the trial court is AFFIRMED.