IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 5, 2011

**ERIC D. WALLACE v. STEPHEN DOTSON, WARDEN**

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 10-CR-114     Joseph H. Walker, III, Judge**

---

**No. W2010-01784-CCA-R3-HC  - Filed May 17, 2011**

---

The Petitioner, Eric D. Wallace, was convicted by a Shelby County Criminal Court jury of felony murder and attempted first degree murder. He was sentenced to life imprisonment for the felony murder conviction and to a consecutive fifteen-year sentence as a Range I, standard offender for the attempted first degree murder conviction, for an effective sentence of life plus fifteen years. He subsequently filed a pro se petition for writ of habeas corpus in the Hardeman County Circuit Court, which was summarily dismissed. On appeal, the Petitioner argues that he is entitled to habeas corpus relief because (1) he asserts that he is "actually innocent" of the charges, (2) his indictments are defective, and (3) the trial court improperly instructed the jury on flight. Upon review, we affirm the judgment summarily dismissing the petition for writ of habeas corpus.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and J. C. MCLIN, JJ., joined.

Eric D. Wallace, Whiteville, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jerry Kitchen, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Procedural History.** The Petitioner was convicted by a Shelby County Criminal Court jury of felony murder and attempted first degree murder. On June 2, 1995, the trial court imposed consecutive sentences of life imprisonment and fifteen years as a Range I, standard offender respectively, for an effective sentence of life plus fifteen years. The Petitioner filed a direct appeal, and this court affirmed the judgments of the trial court. State

v. Eric D. Wallace, No. 02-C-01-9604-CR-00125, 1997 WL 421011 (Tenn. Crim. App., at Jackson, July 28, 1997), perm. to appeal denied (Tenn. Apr. 6, 1998).

The Petitioner then filed a petition for post-conviction relief, which was denied. On appeal, this court affirmed the judgment of the post-conviction court. Eric Wallace v. State, No. W2000-02854-CCA-R3-CD, 2002 WL 1483204 (Tenn. Crim. App., at Jackson, Feb. 19, 2002), perm. to appeal denied (Tenn. Sept. 9, 2002).

The Petitioner subsequently filed a petition for writ of habeas corpus, which was summarily dismissed by the Lauderdale County Circuit Court. The Petitioner appealed, and this court affirmed the judgment of the habeas corpus court. Eric D. Wallace v. James M. Dukes, Warden, No. W2002-00882-CCA-R3-CO, 2002 WL 31895727 (Tenn. Crim. App., at Jackson, Dec. 31, 2002), perm. to appeal denied (Tenn. Mar. 10, 2003).

The Petitioner filed a second petition for writ of habeas corpus in the Hardeman County Circuit Court, which was also summarily dismissed. On appeal, this court affirmed the judgment of the habeas corpus court. Eric D. Wallace v. Stephen Dotson, Warden, No. W2006-00908-CCA-R3-HC, 2007 WL 852173 (Tenn. Crim. App., at Jackson, Mar. 22, 2007), perm. to appeal denied (Tenn. Aug. 13, 2007).

The Petitioner then filed a motion to reopen his petition for post-conviction relief, which was denied by the Shelby County Criminal Court. The Petitioner appealed, and this court affirmed the judgment of the post-conviction court. Eric Dewayne Wallace v. State, No. W2008-00867-CCA-R3-PC, 2009 WL 321294 (Tenn. Crim. App., at Jackson, Feb. 6, 2009).

The Petitioner subsequently filed his third petition for writ of habeas corpus in this case in the Hardeman County Circuit Court on July 27, 2010. On August 3, 2010, the habeas corpus court summarily dismissed the Petitioner's writ for habeas corpus. In the order, the court held that the Petitioner failed to state a cognizable claim in his petition that would entitle him to habeas corpus relief. The Petitioner then filed a timely notice of appeal.

**Facts.** This court summarized the facts for the underlying offenses on direct appeal:

On the evening of July 10, 1992, the defendant and his brother, Percy Wallace, were walking along Woodlawn Street in Memphis. When they were passing the Weddle residence, they saw Jimmy Weddle, known in the neighborhood as "Jim Bodey," sitting on his front porch with several people visiting the Weddle residence. The Wallace brothers asked Weddle to meet them on the sidewalk. They asked Weddle if he knew of anyone who wanted to purchase illicit narcotics. Weddle told the Wallaces there was a woman and

a man who desired to make a purchase. The Wallaces told Weddle to send the individuals to them. They then walked down the street until they came to the next intersection, Woodlawn and Looney.

Boo Boo Fox, who was driving through the neighborhood, stopped to purchase drugs from the Wallaces. Weddle walked to the intersection after Fox stopped his vehicle. Fox asked for a $20 rock of crack cocaine. He gave the Wallaces $15. He was told he did not have enough money to purchase the rock. Fox told the Wallaces he would go to the vehicle and get more money. Fox reached inside the vehicle, obtained a pistol, and told the Wallaces to give him all of the illicit narcotics and money they had on them. He also made them lay on the ground. Weddle began walking backwards toward his residence. Fox obtained the money and drugs, and he fired at the Wallaces. It appears he grazed Percy Wallace. Fox then drove away.

When Fox left, the Wallaces ran toward their residence. Percy Wallace and the defendant each obtained a shotgun. They then went to the Weddle residence as they believed Weddle had assisted Fox in the robbery. Approximately ten to fifteen minutes expired between the robbery and the appearance of the Wallaces at the Weddle residence.

When the Wallaces arrived, Weddle and his guests were still sitting on the front porch. Percy Wallace asked, "Where is Jim Bodey?" He then exclaimed, "Jim Bodey you a dead man [sic]." When the people saw the Wallaces were armed, they began running into the Weddle residence. Percy Wallace fired at Weddle. The shot struck the exterior of the Weddle residence. Percy Wallace then forced his way into the Weddle residence and fired the shotgun two more times in an effort to shoot Weddle.

While Percy Wallace was attempting to reload his shotgun, he told the defendant to shoot anyone who exited the residence. Shortly thereafter, the victim, Venita Swift, who was celebrating her birthday at the Weddle residence, decided to exit the residence and go home. She lived across the street from the Weddles. As she ran from the residence with her arms raised above her head, the defendant stated: "Hold, bitch." Swift looked at the defendant, but she kept running. The defendant raised his shotgun and fired at Swift. She subsequently fell in the street. A few minutes later she died.

The buckshot from the shotgun struck Swift in the back below her left shoulder. The pellets continued through her body. Wadding from the shotgun blast was found under Swift's skin. Numerous pellets entered her body. The

pellets went through the victim's left lung and struck her heart. The pellets also struck the victim's aorta, stomach, spleen, and liver. Two wadding wounds were found. The pathologist estimated that over 100 pellets entered the victim's body. He also estimated the shotgun was approximately ten to fifteen feet from the victim when it was fired. The pathologist testified the cause of death was the shotgun wound inflicted by the defendant.

The defendant was arrested by the police at his place of employment. He was given the Miranda warnings. He readily admitted he shot the victim. He cooperated with the police in an effort to obtain evidence of the murder. However, during the trial, the defendant testified the police did not advise him of the Miranda warnings, and he did not read the statement before signing it. He emphatically denied shooting the victim. He testified he told the victim to "get down."

Eric D. Wallace, 1997 WL 421011, at *1-2.

## ANALYSIS

On appeal, the Petitioner argues that he is entitled to habeas corpus relief because he asserts that he is "actually innocent" of the charges, his indictments are defective, and the trial court improperly instructed the jury on flight. In response, the State argues that the habeas corpus court properly denied relief because the Petitioner has failed to establish that his challenged judgments are void or that his sentences have expired. We agree with the State.

A prisoner is guaranteed the right to habeas corpus relief under article I, section 15 of the Tennessee Constitution. See also T.C.A. §§ 29-21-101 to -130. The grounds upon which a writ of habeas corpus may be issued, however, are very narrow. Taylor v. State, 995 S.W.2d 78, 83 (Tenn. 1999). "Habeas corpus relief is available in Tennessee only when 'it appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered' that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment or other restraint has expired." Archer v. State, 851 S.W.2d 157, 164 (Tenn. 1993).

"The determination of whether habeas corpus relief should be granted is a question of law." Faulkner v. State, 226 S.W.3d 358, 361 (Tenn. 2007) (citing Hart v. State, 21 S.W.3d 901, 903 (Tenn. 2000)). In determining whether to grant habeas corpus relief, our review is de novo without a presumption of correctness given to the lower court's findings and conclusions. Summers, 212 S.W.3d at 255 (citing State v. Livingston, 197 S.W.3d 710, 712 (Tenn. 2006)).

"[T]he purpose of a habeas corpus petition is to contest void and not merely voidable judgments." Potts v. State, 833 S.W.2d 60, 62 (Tenn. 1992) (citing State ex rel. Newsom v. Henderson, 424 S.W.2d 186, 189 (Tenn. 1968)). "A void judgment is one in which the judgment is facially invalid because the court lacked jurisdiction or authority to render the judgment or because the defendant's sentence has expired." Taylor, 995 S.W.2d at 83 (citing Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998); Archer, 851 S.W.2d at 161-64. However, "a voidable judgment is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity." Hickman v. State, 153 S.W.3d 16, 24 (Tenn. 2004) (citing State v. Ritchie, 20 S.W.3d 624, 630-31 (Tenn. 2000)); see also Summers v. State, 212 S.W.3d 251, 256 (Tenn. 2007) (citing Dykes, 978 S.W.2d at 529). Thus, "[i]n all cases where a petitioner must introduce proof beyond the record to establish the invalidity of his conviction, then that conviction by definition is merely voidable, and a Tennessee court cannot issue the writ of habeas corpus under such circumstances." Ritchie, 20 S.W.3d at 633. Additionally, "[i]f the court rendering a judgment has jurisdiction of the person, the subject-matter, and has the authority to make the challenged judgment, the judgment is voidable, not void; and the judgment may not be collaterally attacked in a suit for habeas corpus relief." Passarella v. State, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994), superseded by statute as stated in State v. Steven S. Newman, No. 02C01-9707-CC-00266, 1998 WL 104492, at *1 n.2 (Tenn. Crim. App., at Jackson, Mar. 11, 1998).

It is the petitioner's burden to demonstrate, by a preponderance of the evidence, that the judgment is void or that the confinement is illegal. Wyatt v. State, 24 S.W.3d 319, 322 (Tenn. 2000). If this burden is met, the Petitioner is entitled to immediate release. State v. Warren, 740 S.W.2d 427, 428 (Tenn. Crim. App. 1986) (citing Ussery v. Avery, 432 S.W.2d 656, 658 (Tenn. 1968)).

However, if the habeas corpus court determines from the petitioner's filings that no cognizable claim has been stated and that the petitioner is not entitled to relief, the petition for writ of habeas corpus may be summarily dismissed. See Hickman, 153 S.W.3d at 20; see also T.C.A. § 29-21-109 (2006). The habeas corpus court may summarily dismiss the petition without the appointment of a lawyer and without an evidentiary hearing if there is nothing on the face of the judgment to indicate that the convictions are void. Passarella, 891 S.W.2d at 627. "The petitioner bears the burden of providing an adequate record for summary review of the habeas corpus petition, including consideration of whether counsel should be appointed." Summers, 212 S.W.3d at 261.

A trial court's facially valid judgment cannot be collaterally attacked in a petition for habeas corpus relief. Archer, 851 S.W.2d at 162. Instead, a Petitioner must challenge a facially valid judgment on constitutional grounds in a petition for post-conviction relief. Lewis v. Metro. Gen. Sessions Court for Nashville, 949 S.W.2d 696, 699 (Tenn. Crim. App.

1996) (citing Luttrell v. State, 644 S.W.2d 408, 409 (Tenn. Crim. App. 1982)); see also Fredrick v. State, 906 S.W.2d 927, 929 (Tenn. Crim. App. 1993).

**I. Sufficiency of the Evidence.** First, the Petitioner argues that he is entitled to habeas corpus relief because he is "actually innocent" of the charges in this case. The State responds that the Petitioner's first issue is essentially a sufficiency of the evidence claim, which is not cognizable in a habeas corpus proceeding. We agree. See Myers v. State, 462 S.W.2d 265, 267 (Tenn. Crim. App. 1970) ("Habeas corpus and post-conviction proceedings may not be employed to question or review or test the sufficiency of the evidence at the original trial."); William C. Brothers v. State, No. W2008-00748-CCA-R3-HC, 2009 WL 1643434, at *3 (Tenn. Crim. App., at Jackson, June 12, 2009), perm. to appeal denied (Tenn. Oct. 26, 2009) ("To the extent that the petitioner challenges the sufficiency of the evidence, . . . those claims do not present cognizable grounds for habeas corpus relief."); Jackie F. Curry v. State, No. E2007-02526-CCA-R3-HC, 2008 WL 3066823, at *2 (Tenn. Crim. App., at Knoxville, Aug. 4, 2008), perm. to appeal denied (Tenn. Dec. 8, 2008) ("[A]n attack on the sufficiency of the evidence is not a proper basis for habeas corpus relief.").

Moreover, this court previously concluded that the evidence was sufficient to support the Petitioner's convictions for felony murder and attempted first degree murder on direct appeal:

> Before an accused can be convicted of murder in the perpetration of a felony, the State of Tennessee is required to prove beyond a reasonable doubt (a) the accused recklessly killed the victim and (b) the killing occurred during the perpetration, or attempt to perpetrate, one of the enumerated felonies set forth in the statute. Tenn. Code Ann. § 39-13-202(a)(2). In this case, the State of Tennessee's theory was the defendant recklessly killed the victim while the defendant and his brother were attempting to commit murder in the first degree. The intended victim was Jimmy Weddle.

> The defendant does not challenge the fact he recklessly killed the victim. The evidence of this fact is overwhelming. The defendant gave the police officers a statement admitting he shot and killed the victim. In addition, several eyewitnesses testified the defendant was the person who shot and killed the victim. However, the defendant contends he did not commit the offense of attempt to commit murder first degree. He argues the State of Tennessee failed to establish the offense was committed with deliberation, which is to say "committed with coolness and reflection and without passion or provocation."

> The question this Court must resolve is whether the element of deliberation was established by the evidence.

When this offense was committed, the term deliberation was defined by statute as an act "performed with a cool purpose." Tenn. Code Ann. § 39-13-201(b)(1). The defendant contends his status of being a victim of the robbery, the shooting, and his belief Weddle was acting in concert with Fox created excitement and passion. He argues this excitement and passion had not subsided prior to the criminal conduct in question.

In this case, the defendant and his brother, Percy, left the situs of the armed robbery-shooting, went to their residence, armed themselves with shotguns, and went to the Weddle residence. A rational jury could have found fifteen minutes elapsed from the time of the robbery-shooting and the defendant's appearance at the Weddle residence.

A reasonable and prudent person would have called the police and reported the crime. If the Wallaces reported the robbery-shooting to the police, they would have had to admit they were selling illicit narcotics, and Fox took their money and illicit narcotics. Thus, they did not report the crime to the police. However, the Wallaces felt compelled to establish there was a price to pay when someone committed a criminal act against them. In other words, the Wallaces wanted to deter such conduct in the future. They became the police, judge, jury, and executioner.

There was a concerted effort to kill Weddle. Percy Wallace fired at Weddle as he ran into the dwelling. He then forced his way into the dwelling where he fired twice. While Percy Wallace was attempting to reload the shotgun, he told the defendant to shoot anyone who left the dwelling. When the innocent victim left the residence with her hands held above her head, the defendant shot her in the back from a distance of ten to fifteen feet.

This Court concludes the evidence contained in the record supports a finding by a rational trier of fact [that] the defendant recklessly shot the victim during an attempt to commit first degree murder beyond a reasonable doubt. Tenn. R. App. P. 13(e). See Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Based upon the facts contained in the record, the jury could reasonably conclude sufficient time had elapsed for any excitement or passion to dissipate.

Eric D. Wallace, 1997 WL 421011, at *2-4. Accordingly, the Petitioner is not entitled to relief on this issue.

Within this first issue, the Petitioner also claims that the felony murder and attempted first degree murder indictments are void because "the killing [of Swift] must have been done in pursuance of, rather than collateral to, the attempt[ed first degree] murder, in relation to the natural and probable consequence rule, thereby rendering the convictions and sentence void and unconstitutional." In addition, the Petitioner asserts that although "the jury was instructed on the theory of criminal responsibility for the conduct of another . . . [it] was not instructed on the natur[al] and probable consequence rule of the target crime, which is an essential element that the State must prove beyond a reasonable doubt before the petitioner can be convicted of felony murder and attempted first degree murder based on equal criminal liability for principals, accessories before the fact, and aiders and abettors[.]" Moreover, the Petitioner contends that "the State offered no evidence of the elements for the natur[al] and probable consequence rule of the target crime."

In State v. Howard, 30 S.W.3d 271 (Tenn. 2000), the Tennessee Supreme Court held that the natural and probable consequences rule "underlies the doctrine of criminal responsibility and is based on the recognition that aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put into motion." Id. at 276 (Tenn. 2000) (citing State v. Carson, 950 S.W.2d 951, 954-55 (Tenn. 1997); Key v. State, 563 S.W.2d 184, 186 (Tenn. 1978); State v. Grooms, 653 S.W.2d 271, 275 (Tenn. Crim. App. 1983)). The court also established a three-part test for the natural and probable consequences rule:

> [T]o impose criminal liability based on the natural and probable consequences rule, the State must prove beyond a reasonable doubt and the jury must find the following: (1) the elements of the crime or crimes that accompanied the target crime; (2) that the defendant was criminally responsible pursuant to Tennessee Code Annotated section 39-11-402; and (3) that the other crimes that were committed were natural and probable consequences of the target crime.

Id. The Tennessee Supreme Court again considered the natural and probable consequences rule in State v. Richmond, 90 S.W.3d 648 (Tenn. 2002), wherein it stated:

> The natural and probable consequences rule arose as a common law component of criminal responsibility and extends criminal liability to the crime intended by a defendant, and collateral crimes committed by a co-defendant, that were the natural and probable consequences of the target crime.

Id. at 654 (citing Carson, 950 S.W.2d at 954).

Here, the Petitioner argues that Swift's homicide was not foreseeable at the time he committed the attempted first degree murder offense. However, in State v. Winters, 137

S.W.3d 641, 659 (Tenn. Crim. App. 2003), this court specifically held that the offense of felony murder does not require that the homicide committed during the underlying felony be foreseeable:

> [T]he felony murder statute, both as it existed at the time of the crime and today, does not require that a homicide committed during the course of one of the enumerated felonies be foreseeable. See Tenn. Code Ann. § 39-13-202(a)(2) (1997 & 2003); State v. Hinton, 42 S.W.3d 113, 119 (Tenn. Crim. App. 2000), perm. app. denied (Tenn. 2001). "When one enters into a scheme with another to commit one of the felonies enumerated in the felony murder statutes, and death ensues, both defendants are responsible for the death regardless of who actually committed the murder and whether the killing was specifically contemplated by the other." Id. (citing State v. Brown, 756 S.W.2d 700, 704 (Tenn. Crim. App. 1988)).

Regarding this issue, the State asserts that while the prosecution in this case sought to convict the Petitioner of attempted murder of Weddle based on the theory of criminal responsibility, the prosecution charged the Petitioner as the principal in the felony murder of Swift. Accordingly, the State argues that an instruction on the natural and probable consequences rule was not necessary for the offense of felony murder because the Petitioner was not charged with or found guilty of Swift's death under the theory of criminal responsibility. See State v. Marlon Orlando Walls, No. M2003-01854-CCA-R3-CD, 2006 WL 151923, at (Tenn. Crim. App., at Nashville, Jan. 19, 2006) perm. to appeal denied (Tenn. May 30, 2006) ("Because Defendant was not charged with and held liable for the victim's death under a criminal responsibility theory, an instruction on the natural and probable consequences rule as to the offense of especially aggravated kidnapping was not required."); State v. Jason D. Pillow, No. M2002-01864- CCA-R3-CD, 2004 WL 367747, at *11 (Tenn. Crim. App., at Nashville, Feb. 27, 2004), perm. to appeal denied (Tenn. June 21, 2004) ("Because the defendant was not charged with or held liable for [the victim's] death under a theory of criminal responsibility, an instruction on the natural and probable consequences rule was not required as to that offense."). This court's opinion on direct appeal indicates that there was "overwhelming" evidence that the Petitioner recklessly killed Swift. The court specifically noted that the Petitioner provided a written statement to the police admitting that he killed Swift and that several eyewitnesses testified at trial that the Petitioner was the individual who shot Swift. Accordingly, we agree with the State that the record supports the view that Petitioner was charged and held liable for Swift's death as a principal. However, we also note that, even if the Petitioner was not charged with or found guilty of Swift's death as a principal, an instruction on the natural and probable consequences rule was not required in light of Winters.

Finally, the Petitioner asserts that, because his brother, Percy Wallace, was allowed to enter a plea of guilty in this case to second degree murder, the Petitioner and his brother no longer shared the same criminal intent regarding the felony murder indictment, which he claims is required before concluding that Swift's death was the "natural and probable foreseeable consequence." He asserts that Percy Wallace's guilty plea to second degree murder deprived him of due process and equal treatment under the law and prevented the jury from determining whether the attempted murder of Weddle had ended before imposing criminal liability for the death of Swift. The Petitioner cites no authority to support these arguments. Accordingly, this issue is waived. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); Tenn. R. App. P. 27(a)(7) (A brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefore, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on."). Accordingly, the Petitioner is not entitled to relief on this issue.

**II. Defective Indictment.** The Petitioner also argues that his felony murder and attempted first degree murder indictments were defective. First, he contends that the State at trial only proved that he acted knowingly and intentionally, rather than recklessly as charged in the indictment for felony murder. Second, the Petitioner argues that Percy Wallace's guilty plea to second degree murder shows that the Petitioner was not "an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit the . . . murder of Jimmy Weddle" and if the Petitioner's actions were not reckless but knowing regarding the murder of Swift, then the reckless element of felony murder was not established by the prosecution. The State responds that the trial court properly determined that the indictment sufficiently informed the Petitioner of the charges against him. The State also argues that this issue "appears to be a veiled attempt to again attack the sufficiency of the convicting evidence, which is not a valid claim in habeas corpus." We agree with the State.

The United States Constitution and the Tennessee Constitution state that a defendant is entitled to knowledge of "the nature and cause of the accusation." U.S. Const. amend. VI; Tennessee Const. art. I, § 9. Pursuant to State v. Hill, an indictment is valid if it contains sufficient information

(1) to enable the accused to know the accusation to which answer is required,

(2) to furnish the court adequate basis for the entry of a proper judgment, and

(3) to protect the accused from double jeopardy.

954 S.W.2d at 727 (citing <u>State v. Byrd</u>, 820 S.W.2d 739, 741 (Tenn. 1991); <u>VanArsdall v. State</u>, 919 S.W.2d 626, 630 (Tenn. Crim. App. 1995); <u>State v. Smith</u>, 612 S.W.2d 493, 497 (Tenn. Crim. App. 1980)). In addition, pursuant to Tennessee Code Annotated section 40-13-202, the indictment must

> state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner so as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment. . . .

T.C.A. § 40-13-202 (2006).

We note that typically a defendant must raise an objection to a defect in the indictment prior to trial. Tennessee Rule of Criminal Procedure 12(b)(2) states that a failure to raise an objection prior to trial based on a defect in the indictment generally results in waiver. Tenn. R. Crim. P. 12(b)(2)(B); <u>see also</u> Wyatt, 24 S.W.3d at 322. However, "an indictment that is so defective as to fail to vest jurisdiction in the trial court may be challenged at any stage of the proceedings, including in a habeas corpus petition." <u>Wyatt</u>, 24 S.W.3d at 323 (citing Tenn. R. Crim. P. 12(b)(2); <u>Dykes</u>, 978 S.W.2d at 529).

Here, the indictment charging the Petitioner with felony murder of Swift provided:

> THE GRAND JURORS of the State of Tennessee, duly selected, empaneled, sworn and charged to inquire for the body of the county of Shelby, Tennessee, upon their oath, present that:
>
> ERIC D. WALLACE
> and
> PERCY WALLACE
>
> on July 10, 1992, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully and recklessly kill VENITA SWIFT during and [sic] attempt to perpetrate First Degree Murder, in violation of T.C.A. 39-13-202, against the peace and dignity of the State of Tennessee.

In addition, the indictment charging the Petitioner with attempted first degree murder of Weddle provided:

-11-

THE GRAND JURORS of the State of Tennessee, duly selected, impaneled, sworn and charged to inquire for the body of the county of Shelby, Tennessee, upon their oath, present that:

ERIC D. WALLACE
and
PERCY WALLACE

on July 10, 1992, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully attempt to commit the offense of First Degree Murder as defined in T.C.A. 39-13-202, in that they, the said Eric D. Wallace and the said Percy Wallace did unlawfully, intentionally, deliberately, and with premeditation attempt to kill JIMMY WEDDLE by use of a deadly weapon, to wit: a firearm and did cause the said JIMMY WEDDLE to reasonably fear imminent bodily injury, in violation of T.C.A. 39-12-101, against the peace and dignity of the State of Tennessee.

The Petitioner has failed to establish that these indictments are defective. In fact, this court, in the Petitioner's appeal from the summary dismissal of his first petition for writ of habeas corpus on the instant charges, specifically concluded, "The indictments meet the criteria as set out in Tennessee Code Annotated section 40-13-202, as they are sufficient to apprize petitioner of the charges for which he needed to prepare." Eric D. Wallace, 2002 WL 31895727, at *2.

Moreover, the State asserts that the Petitioner's defective indictment issue "appears to be a veiled attempt to again attack the sufficiency of the convicting evidence, which is not a valid claim in habeas corpus." We agree. The State further asserts that "[t]o the extent that the petitioner might be arguing that there is a fatal variance between the charges alleged in the indictment and the proof presented at trial, that issue has also been addressed by this Court in a previous habeas [corpus] proceeding." We also agree with the State on this point. In the Petitioner's appeal from the summary dismissal of his second petition for writ of habeas corpus on these charges, the court concluded, "[T]he [Petitioner's] allegation of a fatal variance between the indictment and proof at trial is not a cognizable ground for habeas corpus relief." Eric D. Wallace, 2007 WL 852173, at *2 (citing William T. Yelton v. Robert Waller, Warden, No. M2004-02529-CCA-R3-HC, 2006 WL 119628, at *1 (Tenn. Crim. App., at Nashville, Jan. 17, 2006); Stephen Lajuan Beasley v. State, No. E2005-00367-CCA-MR3-HC, 2005 WL 3533265, at *4 (Tenn. Crim. App., at Knoxville, Dec. 27, 2005), perm. to appeal denied (Tenn. May 30, 2006); Byron Edwards v. State, No. E2004-00918-CCA-R3-HC, 2004 WL 2951975, at *1-2 (Tenn. Crim. App., at Knoxville, Dec. 20, 2004), perm. to appeal denied (Tenn. Mar. 21, 2005)). Accordingly, the Petitioner is not entitled to relief on this issue.

**III.  Trial Court's Instruction on Flight.**  The Petitioner lastly argues that he is entitled to habeas corpus relief because the trial court provided the jury with a "flawed" instruction on flight.  He contends that flight was not enough to convict him of felony murder because, while the evidence showed him leaving the scene, it did not show "a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight" pursuant to Rogers v. State, 455 S.W.2d 182, 187 (Tenn. 1970).  In response, the State contends that "even if the instruction was erroneous, it would not render the judgment void."  We agree with the State.  See Rain Thomas Chesher v. Stephen Dotson, Warden, No. W2008-00739-CCA-R3-HC, 2008 WL 3892017, at *2 (Tenn. Crim. App., at Jackson, Aug. 22, 2008), perm. to appeal denied (Tenn. Jan. 20, 2009) ("[T]he petitioner's challenges to the jury instructions, even if proven, would render his conviction voidable, not void."); Rodney L. Tipton v. Howard Carlton, Warden, No. E2007-02625-CCA-R3-HC, 2008 WL 3539727, at *2 (Tenn. Crim. App., at Knoxville, Aug. 14, 2008), perm. to appeal denied (Tenn. Dec. 8, 2008) ("A claim of erroneous jury instructions is not a cognizable basis for habeas corpus relief."); Jackie F. Curry v. State, No. E2007-025320-CCA-R3-HC, 2008 WL 3066823, at *4 (Tenn. Crim. App., at Knoxville, Aug. 4, 2008), perm. to appeal denied (Tenn. Dec. 8, 2008) ("This Court has repeatedly found that erroneous jury instructions cannot form the basis for habeas corpus relief.").  The Petitioner is not entitled to relief on this issue.

The Petitioner has not established that his judgments are void and has not argued or established that his sentences have expired.  Accordingly, the court's dismissal of the petition for writ of habeas corpus was proper.

## CONCLUSION

The habeas corpus court's summary dismissal of the petition for writ of habeas corpus is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE