**STATE of Tennessee, Appellee,**

v.

**Diane GROOMS, Appellant.**

**No. 8357.**

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 25, 1983.

Permission to Appeal Denied by Supreme Court May 31, 1983.

John C. Leonard, Jr., Lewisburg, for appellant.

William M. Leech, Jr., Atty. Gen., Kimberly J. Dean, Asst. Atty. Gen., Nashville, James S. Kidd, Dist. Atty. Gen., Fayetteville, Barry White, Asst. Dist. Atty. Gen., Lewisburg, for appellee.

## OPINION

TATUM, Judge.

In a 15-count indictment, the defendant, Diane Grooms, was convicted of seven counts of armed robbery, three counts of assault with intent to commit murder, and one count of aggravated assault. She was sentenced to the penitentiary for a life term on one count of armed robbery and for a term of 30 years on each of the remaining

six counts of armed robbery. She was also convicted of three counts of assault to commit murder and was sentenced to a term of not less than 10 years nor more than 20 on each of these counts. In addition, she received a penitentiary sentence of not less than 4 nor more than 10 years on the aggravated assault count. The life sentence for armed robbery, three of the 30-year sentences for armed robbery, and the three sentences for assault to murder were ordered to run consecutively. The remaining four sentences were ordered to run concurrent with the aforementioned consecutive sentences. In this appeal, the defendant has presented several issues, on various grounds. After considering them, we conclude that the judgment of the trial court must be affirmed.

This prosecution grew out of an incident that occurred at approximately 8:00 A.M. on October 11, 1980, when the defendant and two men entered the H & S Pharmacy No. 1 in Lewisburg. One of the men, Jerry Fails, had a 16-gauge pump shotgun and the other man, Willie Joe Frazier, had a pistol. The trio herded all of the employees and customers of the pharmacy into a backroom where they bound and robbed them. One of the customers had a baby with him who began crying. Fails directed Frazier to kill the baby, but Frazier refused.

While the robbery was in progress Mr. Richard Watson left his wife in the car and entered the pharmacy to buy a birthday card. Without reason, Fails shot Mr. Watson in the left thigh with the shotgun. When Mr. Watson did not return to the car, Mrs. Watson went into the pharmacy and Fails also shot her in the leg with the shotgun.

After the trio left the pharmacy in the defendant's automobile, Deputy Sheriff Jack Green followed it because it was speeding. After the deputy pulled in behind the automobile, it stopped and Fails shot into Deputy Green's car, shattering the windshield. Fails fired two shots at the officer, before getting back into the automobile to leave.

The defendant, testifying in her own behalf, said that she was asleep and was not aware that a robbery was being planned. She went into the pharmacy to "look around." Fails and Frazier came in with firearms and rope to tie up the victims. She was not aware that the firearms were in her car. She testified that she was too afraid to leave the scene. We will later discuss pertinent details of the criminal episode as appropriate in discussing the various issues.

■■■ The defendant first complains of the trial court's refusal to order a change of venue. This is a question within the discretion of the trial judge, and we may not reverse his action unless there is a clear abuse of this discretion. *State v. Garland*, 617 S.W.2d 176 (Tenn.Cr.App.1981). Venue may be changed if it appears to the court that, due to undue excitement against the defendant in the county where the offense was committed or for any other cause, a fair trial probably could not be had. T.R. Cr.P. 21(a).

■■■ Immediately after this occurrence, the news media gave extensive publicity to the robbery and to the defendants. The publicity incorporated in the record was not inflammatory nor sensational in nature but it gave a narrative account of the facts. One of the accomplices, Frazier, escaped from the Marshall County Jail and much of the publicity concerned his escape. There was very little or no publicity concerning this crime during the few months prior to trial. As stated, the offense occurred on October 11, 1980 and the defendant's trial did not begin until September 21, 1981.

While it appears that many of the jurors had read or heard about the case prior to trial; the record indicates that the jurors who were actually accepted, were unprejudiced by pretrial publicity and were competent jurors. This is the ultimate test for our determination. *State v. Garland, supra.* As stated, the question of a change of venue is discretionary with the trial judge. There was evidence heard, pro and con, on the motion to change venue that dealt with whether the defendant could receive a fair

trial in Marshall County. This question was resolved by the trial judge and there was abundant evidence to support his finding that the defendant could obtain a fair trial in that county. We find no abuse of the trial judge's discretion.

In *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), the United States Supreme Court reaffirmed a previous holding of that court saying: "Extensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render a trial constitutionally unfair." The court also held that unfairness would not be presumed from a showing of extensive media coverage in the absence of a "trial atmosphere utterly corrupted by press coverage." This record reflects no such corrupt trial atmosphere.

Much is said about a visit of members of the Ku Klux Klan to Marshall County before the trial. However, the record is clear that this group was in Marshall County to raise funds and the visit was not related in any manner to this trial.

The defendant did not exhaust his peremptory challenges. Knowledge in the community of the events caused by media coverage was eroded by the time of trial. The record indicates that the jurors actually selected were fair and impartial and decided the case solely upon the law and the evidence. We must overrule this issue.

■ In the next issue, the defendant complains of the Assistant Attorney General brandishing, pumping, cocking and pulling the trigger of the shotgun used in the robbery. The shotgun was an exhibit. The record reflects that on two occasions during final argument, the District Attorney "snapped" the trigger of the shotgun. Since no objection was made in the trial court, we cannot consider this issue. *State v. McKinney,* 603 S.W.2d 755 (Tenn.Cr.App. 1980); Rule 36(a), T.R.A.P.

■ In her next issue, the defendant says that the trial judge should have declared a mistrial when the Assistant District Attorney "assailed the accused as a liar." When the defendant testified in her own behalf,

she first stated that she had never been to Lewisburg until she awoke in her car with Frazier and Fails in front of H & S Pharmacy No. 1, immediately before the robbery. On cross examination, she was confronted with a statement that she had given to police saying that she had accompanied Fails and Frazier to Lewisburg the day before the robbery when they went to H & S No. 2. The statement continued that they left that store because there were too many people there and that they then went to H & S No. 1. When the Assistant District Attorney confronted the defendant with this discrepancy, she then testified concerning her visit to Lewisburg the day before the robbery. The District Attorney asked her whether she had changed her story "like a good liar." There was a basis for the District Attorney to ask the defendant on cross examination whether she had lied. See *State v. Beasley,* 536 S.W.2d 328, 330 (Tenn.1976).

In any event, the trial judge sustained defense counsel's objection and instructed the jury to disregard the District Attorney's "comment" to the effect that the witness was a liar. The defendant made no motion for a mistrial and the trial judge acted properly in not ordering such a motion *sua sponte.* In dealing with a similar circumstance, this court stated in *State v. Barton,* 626 S.W.2d 296 (Tenn.Cr.App.1981):

"... Under these circumstances, we think that the trial judge did all that he could reasonably be expected to do to nullify the effect of this evidence. The defendant was in jeopardy and a *sua sponte* granting of a mistrial would have prevented the State from again putting the defendant to trial without violating the constitutional prohibitions against double jeopardy. The occurrence did not meet the standard of 'manifest necessity' so as to authorize the trial court to order a mistrial without the defendant's request or acquiescence." (citations omitted.)

■ The defendant next complains of the refusal of the trial judge to grant her special request to charge the jury on the law as

to aiders and abettors. The defendant's special request was:

"In order to aid and abet another to commit a crime, it is necessary that accused in some sort associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree; the same criminal intent must exist in the minds of both. There must be a community of unlawful purpose at the time that the act is committed."

The trial judge's charge on the subject is as follows:

"I further charge you, in order to convict a defendant of a crime, it is not absolutely necessary for the State to show that such defendant, actually, and with her own hand, did the criminal act. All persons, present, aiding and abetting, or ready and consenting to aid or abet in the commision (sic) of a crime, are principals as such. And, the act of one is the act of all. Mere presence, however, would not make a person a principal. She would have to know that the crime was being committed, or attempted, and aid and abet in its commission, or, be ready and consenting to aid and abet in its commission, to make her guilty as a principal. An aider and abettor is one who advises, counsels, procures, assists, helps, or participates with another to commit a crime."

We think that the charge as given covered all of the elements contained in the special request. Though not in the same language, the judge stated the requirement that an aider and abettor must have been associated with the criminal venture. The charge as given also included language that the aider and abettor must have been present and had knowledge that the crime was being committed, or attempted, when the accused aided and abetted, or consented to aid and abet. The requirement of knowledge that the crime was being committed when the accused participated, is equivalent to the requested language that the accused shared the intent with the actual perpetra-

tor. Further, the special request was inaccurate as it did not include the rule next discussed.

 Under this issue, the defendant argues that she was not inside the drugstore when Mr. and Mrs. Watson were shot and that she did not shoot at Deputy Green, or participate in the aggravated assault of Jackie Lowe. She states that there was no evidence that she shared in the intent or act of committing these particular offenses. However, there was overwhelming evidence that she participated, both as an aider and abettor and also as a perpetrator in the robbery, with requisite criminal intent. *Jenkins v. State,* 509 S.W.2d 240 (Tenn.Cr. App.1974), cited with approval from 22 C.J.S., *Criminal Law* § 87 stating in pertinent part:

" . . . The common purpose need not be to commit the particular crime which is committed; if two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal, if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose, or as a natural or probable consequence thereof."

The crimes of which defendant says that she had no intent, were all committed as a part of the common purpose of committing these robberies at the drugstore and effecting an escape. Although she may not have had the particular intent to commit some of these offenses, they were natural and probable consequences of the common purposes of robbery with firearms. Cf. *Key v. State,* 563 S.W.2d 184 (Tenn.1978).

The offense against Jackie Lowe was for aggravated assault in violation of T.C.A. § 39–2–101(b)(3) which provides that:

"Any person who assaults another while displaying a deadly weapon or while the victim knows such person has a deadly weapon in his possession_ _ _"

The defendant was not charged with the armed robbery of Mrs. Lowe, but she was charged and convicted of an aggravated

assault upon her. Mrs. Lowe was tied up by the robbers while the guns were pointed at her.

There was evidence that the defendant was much more than an innocent bystander to these various criminal acts. She furnished the automobile which the trio used in coming from Birmingham to Lewisburg to commit these crimes. On the day before the crimes were committed, the robbers drove to Lewisburg and "cased" both the H & S Pharmacy No. 1 and the H & S Pharmacy No. 2. It was the former that was robbed. The defendant spent the night in Columbia with Fails and Frazier and returned the next day with them. She actually tied up at least two of the victims and there was evidence that she actually held the .357 Magnum pistol during the course of the robberies. There was evidence that she carried a pillowcase into the store in which the fruits of the crime were placed.

After Richard Watson entered the store, the defendant warned Fails and Frazier that Mr. Watson had left "a wife or girlfriend" in his car. When one of her accomplices said "We've got to get her (Mrs. Watson) in here," the defendant assisted Frazier by carrying a large box containing the loot from the store. As she left the store, the defendant was smiling and laughing and pretended to say to a person in the store, "We will see you later." Following this ruse, Mrs. Watson went into the store and was shot. The robbers made their escape in defendant's automobile and she laid down in the backseat of the car to deceive officers into thinking that there were only two occupants in the car.

As already discussed, the defendant was actually or constructively present when all the crimes were committed. All of the crimes were committed in pursuance of a common purpose, or as a natural or probable consequence thereof. We must therefore overrule the issue in which the defendant insists that the trial judge should have directed a verdict in her favor in the three cases of assault to murder and in the aggravated assault case.

Next, the defendant insists that all of the armed robbery charges in the indictment should have been merged into but one offense, citing *State v. Henderson,* 620 S.W.2d 484 (Tenn.1981). In the *Henderson* case, a defendant was convicted of two counts of robbery at the trial level. The victim, a gas station attendant, was robbed of the gas station's money as well as his own personal money. The Supreme Court held that only one conviction could be sustained since the attendant's personal money and the gas station's money had been forcibly taken from only one person. The court properly observed that both convictions could not stand simply because the items taken had belonged to two different entities.

Also, the court said in dicta that:

"Dual or multiple convictions of robbery have been sustained where a defendant robs two or more persons, although the robberies took place as a single act, at the same time and in the same place." (citations omitted.)

The court observed that in all cases where dual or multiple convictions had been sustained, the charges had been based upon the presence of two or more persons and the forcible taking of property belonging to each person.

We believe that the issue under consideration is controlled by *Moore v. State,* 563 S.W.2d 215 (Tenn.Cr.App.1977). In that case, the defendant and two others robbed two women. The court in upholding dual convictions, said:

"Next, the defendant's double jeopardy contention is not tenable. The dual convictions here were legally justified. In our opinion, there were two separate crimes of armed robbery committed by the defendant. There were two victims and both were assaulted and robbed in separate and distinct acts. Different items of property taken belonged individually to each victim. Different evidence was required to establish each offense. In dealing with similar factual circumstances in other cases, our courts have explicitly authorized such dual convictions. *Black v. State* [*State v. Black*],

524 S.W.2d 913 (Tenn.1975); *Morgan v. State,* 220 Tenn. 247, 415 S.W.2d 879 (1967); *Wilkerson v. State,* 211 Tenn. 32, 362 S.W.2d 253 (1962); *Wiley v. State,* 552 S.W.2d 410 (Tenn.Cr.App.1977)."

■ The defendant in this case was originally indicted twice for the robbery of Sam Shelton. In Count 7, she was charged with robbing Shelton of his personal belongings and in Count 15, she was charged with robbing Shelton of property belonging to the pharmacy. The trial court properly dismissed Count 7. However, the trial judge also properly allowed the remaining charges to stand because each of the other victims were robbed of their own property. The fact that some of the other victims were also employees of H & S Pharmacy is of no significance. Also see *Morgan v. State,* 220 Tenn. 247, 415 S.W.2d 879 (1967); *Wilkerson v. State,* 211 Tenn. 32, 362 S.W.2d 253 (1962). This issue has no merit.

Without citing authority, the defendant next makes issue that the trial judge erred in ordering consecutive sentences for multiple convictions for armed robbery. The reason she gives for this contention is that there was only one offense. However, we have already held to the contrary by recognizing the various individual crimes. Consecutive sentences are authorized in this case under the tests provided in *Gray v. State,* 538 S.W.2d 391 (Tenn.1976).

Finally the defendant complains that the trial judge should have granted her a new trial because the jury's verdict upon the various counts of the indictment was arbitrary, capricious and excessive. The defendant reargues the other issues herein discussed as the basis upon which a new trial should have been granted. We have already disposed of these issues. The punishments fixed were within the range prescribed by statute. The evidence of the defendant's guilt of these numerous crimes was overwhelming; it much more than meets the standard required by Rule 13(e), T.R.A.P. This criminal episode in which numerous crimes were committed, including the needless crippling of two innocent young people for life, was heinous. Except for the circumstances outlined in *Gray v. State, supra,* there is no policy in the law that requires only one punishment for numerous crimes. The trial judge made no error in overruling the motion for a new trial.

It results, that the judgments of the court below are affirmed.

DAUGHTREY and SCOTT, JJ., concur.