# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 7, 2014

## STATE OF TENNESSEE v. JAMECA M. TIPLER

**Appeal from the Circuit Court for Madison County**
**No. 13-239    Roy B. Morgan, Jr., Judge**

---

**No. W2014-00288-CCA-R3-CD  - Filed February 19, 2015**

---

The Defendant-Appellant, Jameca M. Tipler, was indicted by the Madison County Grand Jury for attempted first degree premeditated murder, aggravated assault, felony evading arrest, reckless endangerment, and felony vandalism. The jury convicted Tipler of all the charged offenses except the felony vandalism charge, which the jury determined was a misdemeanor. The trial court merged the aggravated assault conviction with the attempted first degree murder conviction and sentenced Tipler to an effective sentence of twenty-five years. On appeal, Tipler argues: (1) the evidence is insufficient to support his convictions for attempted first degree murder, aggravated assault, reckless endangerment, and misdemeanor vandalism, and (2) the jury charge and verdict form were erroneous because they did not require the jury to determine whether he was criminally responsible before determining whether he was guilty of the underlying charges, and the trial court erred by not including an instruction on the natural and probable consequences rule in its instruction on criminal responsibility. Upon review, we remand to the trial court for entry of a judgment reflecting the modified conviction for facilitation of attempted first degree murder, which should also reflect the merger of the modified conviction for facilitation of aggravated assault with the conviction for facilitation of attempted first degree murder, for entry of a judgment reflecting the indicted offense of reckless endangerment by discharging a firearm into a habitation and the modified conviction for facilitation of reckless endangerment by discharging a firearm into a habitation, and for resentencing. We affirm the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court**
**Affirmed in Part, Reversed and Vacated in Part, and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Sheila B. Stevenson, Nashville, Tennessee, for the Defendant-Appellant, Jameca M. Tipler.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; James G. Woodall, District Attorney General; and Rolf G. Hazlehurst, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Trial.** Michael Moncher, a deputy with the Madison County Sheriff's Office, testified that on December 1, 2012, at approximately 11:00 p.m., he heard a series of gunshots as he was driving on Whitehall Street on his way to work. He could tell that the shots were coming from a black sport utility vehicle (SUV) approximately fifty to seventy-five feet in front of him. He observed several muzzle flashes coming from the passenger side of the vehicle and heard "several [gunshots]" before "it stopped for a second and then it started back." He estimated that the total number of gunshots was fifteen to twenty. He was unable to determine whether the shots were being fired from the front passenger seat or the back passenger seat of the SUV.

Deputy Moncher activated his blue lights and siren and approached the SUV. The SUV immediately began traveling at a high rate of speed, somewhere between sixty and sixty-five miles per hour, through the residential area. The SUV then made several sudden stops as if it were going to pull over, and then increased its speed in an effort to elude Deputy Moncher. During one of these stops, Deputy Moncher saw two people get out of the SUV and run away. Deputy Moncher was unsure whether these two people were ever located.

After the two individuals exited the car, the SUV sped off and continued to travel at a high rate of speed through the residential area until it pulled into a steeply inclined driveway at either 117 or 119 Lockwood Drive. Deputy Moncher pulled in behind the SUV to prevent it from backing out. As the SUV came to a stop, the driver and a passenger exited the vehicle and ran in different directions. At the time, Deputy Moncher had already exited his patrol car and was using his door as a shield in case the suspects fired at him. Once the two men jumped out of the vehicle and fled, the abandoned SUV rolled backward down the incline, hitting the front of the patrol car. As the patrol car was pushed backward, the open driver's side door of the patrol car hit Deputy Moncher's shoulder and leg. The damage to the patrol car as a result of this collision was just over $500. Deputy Moncher identified Tipler at trial as the driver of the SUV. He acknowledged that he did not know if Tipler intentionally allowed the SUV to roll backward onto his patrol car; however, he said, "[M]ost people usually put their vehicle in park when they get out of it[,] and it won't roll back." He said a tracking dog quickly followed Tipler's trail, and Tipler was arrested a few minutes later. Deputy Moncher said the passengers in the car were never found.

Brandon Moss, a sergeant with the canine unit of the Jackson Police Department, testified that his dog tracked Tipler for thirty to forty yards through thick underbrush. When his dog got close to Tipler, Officer Moss heard Tipler say, "I give up. You caught me[.]" He said that no weapons were recovered from Tipler's person. He also said a second canine officer was unable to apprehend the passenger who exited the SUV with Tipler.

Prior to the victim, Roderick Gladney, taking the stand, the State informed the trial court in a hearing outside the presence of the jury that the victim would be invoking his Fifth Amendment privilege against self-incrimination during his testimony, even though the State did not believe he had standing to do so. The trial court asked whether the victim would be making statements that could result in his prosecution for a criminal offense, and the State responded, "Not that I'm aware of. That's why I say I question his standing to do that. I don't see how it would." During the jury out hearing, the trial court informed the victim that he had the right to invoke his Fifth Amendment privilege if his response to any question incriminated him. However, the court explained that the victim was not allowed to invoke his Fifth Amendment privilege simply because he did not want to answer a particular question. In the presence of the jury, the victim subsequently testified that on December 1, 2012, he lived at 811 Whitehall Street in Jackson, Tennessee, and was shot in the chest. The victim stated that he did not want to testify in this case and did not recall anything else that happened on December 1, 2012. He said he did not know who shot him and did not know Tipler.

Dawanica McClellan testified that she was present when the victim was shot at his home at 811 Whitehall Street. Shortly after she arrived at the victim's home, the victim received a phone call and walked out onto the front porch. An instant later, she heard shots and got down on the floor. She identified photographs of bullet holes in the home's door, floor, and roof from the shooting incident. When the shooting stopped, McClellan exited the home and saw the victim lying on the ground in a pool of blood. She admitted that the victim had told her to leave his home for her own safety when she had been at his house earlier that day. McClellan stated that she did not know who had shot the victim.

Lebresee Jeter testified that she was inside the home at 811 Whitehall Street when the shooting began and that she heard approximately thirty shots fired during the incident. The shooting began immediately after the victim walked out onto the front porch. After the shooting, Jeter saw the victim lying on the ground with blood pooled around him. Jeter never saw who shot the victim. She identified photographs depicting bullet holes in the victim's home.

John Reese, an officer with the Jackson Police Department, testified that he responded to the call regarding the shooting at 811 Whitehall Street. Upon arriving at the scene, he

observed the victim with a chest wound. He bandaged the victim's wound in an attempt to keep the victim's lung from collapsing. Officer Reese saw "multiple shell casings just strewn in the road . . . along Whitehall Street." He said several rounds had hit the victim's home near where the victim had been standing. Officer Reese identified photographs showing the trail of fifteen shell casings along the road in front of the victim's home. He recalled that two different shell casings were recovered from the scene. Although most of the shell casings were nine millimeter, there was also a .45 caliber shell casing that was recovered, which meant that at least two different weapons had been fired at the scene. Officer Reese stated that the victim was wearing a generic holster on his hip but that no gun was in the holster. He did not recall finding shell casings on the front porch near the victim.

David Evans, another officer with the Jackson Police Department, testified that he collected the victim's bloody shirt and hat, the shell casings, and other evidence at the crime scene. He collected some of the shell casings from the front porch but could not remember the kind or number of these casings. He also collected some shell casings from the street in front of the victim's home.

Alberto Colon, a sergeant in the violent crimes unit of the Jackson Police Department, testified that when he saw the victim at the hospital in Jackson, he was doing so poorly that they were not sure whether he would survive. He said the victim was later airlifted to the Regional Medical Center at Memphis. Sergeant Colon stated that when he arrived at the crime scene, he saw the victim's shirt, hat, and T-shirt lying on the porch. He also observed several shell casings on the porch as well as "a path of [shell casings] just running down" Whitehall Street going toward North Hays Avenue. He stated that nineteen or twenty shell casings were collected from the scene.

Sergeant Colon stated that Tipler, after being advised of his Miranda rights, gave a statement to him at the criminal justice complex. In this statement, Tipler said that two men at the gas station on Whitehall Street asked him for a ride to Lane College in exchange for fifteen dollars. Tipler said that at the time, he had a woman with him named Simone, whom he had met the day before. The men gave Tipler fifteen dollars, and one of the men got in the front passenger seat while the other man sat in the back seat with Simone. Tipler said that when he drove down Whitehall Street near the Eastgate Liquor Store, "the dude in the passenger's seat told me to slow down, so I did, and then they started shooting." The man on the front porch started shooting, and the two men in his car returned fire. Tipler said an officer immediately began pursuing him, and he was scared. He never got the names of the two men in his car. Tipler said the man in the front seat had a dark complexion, weighed between 165 and 170 pounds, was five feet ten or eleven inches tall, had a mustache, and was wearing black jeans and a black shirt. The man in the back seat was five feet eight or nine inches tall, had facial hair, sideburns, little twists in his hair, weighed around 180 pounds,

had a medium complexion, and was dressed in dark clothing. Tipler said Simone and the man in the back seat jumped out of his car around the area of Lincoln Circle. Tipler said he drove to the house on the other side of Lincoln Circle and jumped out of the vehicle without thinking about the passenger and ran because he was scared.

Sergeant Colon said he tried to obtain the video recording from the gas station on Whitehall Street but its video recording system was not functioning the night of the shooting. He said the police department received a couple of tips regarding the men in Tipler's car during the shooting incident, but none of the tips provided any leads. Sergeant Colon was unsure whether a canine unit had gone to the Lincoln Circle area to locate the suspects that exited the car first. Although he remembered seeing shell casings on the victim's front porch, which indicated that shots had been fired from the porch, he did not recall the type of these shell casings. However, he said that the shell casings on the street were nine millimeter, which caught his eye because these shell casings formed "a yellow track running down [the street]." Sergeant Colon said no guns were recovered from the scene. He acknowledged that the police were never able to develop Tipler's motive for the shooting. He also acknowledged that the victim had told him that he did not know Tipler and that he was unable to give a description of the vehicle from which the shots were fired. Sergeant Colon said he never presented Tipler with a photospread to try to identify the two men in his car. When asked if he believed the case was closed when Tipler was arrested, Sergeant Colon said he knew Tipler was the driver during the incident and that "we didn't have our shooter." While at the crime scene, Sergeant Colon collected the victim's phone and determined that the victim was talking to his girlfriend at the time he was shot. The defense later recalled Sergeant Colon, who acknowledged that the police received one tip on the Crimestoppers line indicating that Tipler was "believed to have been set up . . . by the two men [who] managed to escape by running from the scene."

**ANALYSIS**

**I. Sufficiency of the Evidence.** Tipler argues that the evidence is insufficient to sustain his convictions for attempted first degree murder, aggravated assault, reckless endangerment, and misdemeanor vandalism. After carefully considering the evidence presented at trial, we conclude the evidence is sufficient to sustain the vandalism conviction and is sufficient to sustain modified convictions for facilitation of attempted first degree murder, facilitation of aggravated assault, and facilitation of reckless endangerment.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). When a defendant challenges the sufficiency of the evidence, the standard of review applied

by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing <u>State v. Brown</u>, 551 S.W.2d 329, 331 (Tenn. 1977); <u>Farmer v. State</u>, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" <u>State v. Dorantes</u>, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting <u>State v. Hanson</u>, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. <u>State v. Campbell</u>, 245 S.W.3d 331, 335 (Tenn. 2008) (citing <u>Byrge v. State</u>, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. <u>Dorantes</u>, 331 S.W.3d at 379 (citing <u>State v. Rice</u>, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. <u>Id.</u>

**A.    Attempted First Degree Murder, Aggravated Assault, and Reckless Endangerment.** Tipler argues that the evidence is insufficient to sustain his convictions for attempted first degree premeditated murder, aggravated assault, and reckless endangerment. He claims the trial court should have granted his motion to dismiss these charges because the indictment alleged that he committed the acts constituting these offenses instead of alleging that he was responsible for the acts committed by another pursuant to the theory of criminal responsibility. He also asserts that he cannot be criminally responsible for the acts of another when the principal is not named in the indictment. Finally, Tipler argues that the evidence is insufficient to show that he was criminally responsible for the offenses of attempted first degree murder, aggravated assault, and reckless endangerment.

Contrary to Tipler's first assertion, there is no requirement to charge criminal responsibility in the indictment because the State is entitled to pursue different theories of criminal liability. "[C]riminal responsibility is not a recognizable offense in itself, but is solely a theory by which the State may hold the defendant liable for the principal offense committed by another." <u>State v. Lemacks</u>, 996 S.W.2d 166, 173 (Tenn. 1999) (citing T.C.A.

§ 39-11-402). Consequently, there is no requirement that the State "elect between prosecution as a principal actor and prosecution for criminal responsibility[.]" State v. Hodges, 7 S.W.3d 609, 625 (Tenn. Crim. App. 1998) (citing State v. Williams, 920 S.W.2d 247, 257-58 (Tenn. Crim. App. 1995)). So long as a defendant has been indicted for the primary offense, a separate indictment charging criminal responsibility for the conduct of another is unnecessary. State v. Sherman, 266 S.W.3d 395, 408 (Tenn. 2008) (citing Lemacks, 996 S.W.2d at 170; State v. Barnes, 954 S.W.2d 760, 763 (Tenn. Crim. App. 1997)). In other words, "[a]n indictment that charges an accused on the principal offense 'carries with it all the nuances of the offense,' including criminal responsibility." Lemacks, 996 S.W.2d at 173 (quoting State v. Lequire, 634 S.W.2d 608, 615 (Tenn. Crim. App. 1981)).

We next address Tipler's claim that he cannot be criminally responsible for the acts of another when the principal was never named in the indictment. It is well established that an individual can be held criminally responsible for the acts of another even if the principal is never charged, named in the indictment, or identified at trial. In Justin Mathis, the defendant argued that the trial court erred in instructing the jury on criminal responsibility because no other individuals were charged with or accused of the offense. State v. Justin Mathis, W2005-02903- CCA-R3-CD, 2007 WL 2120190, at *12 (Tenn. Crim. App. July 20, 2007), perm. app. denied (Tenn. Dec. 26, 2007). The defendant also argued that the evidence was insufficient to support his conviction for first degree premeditated murder because of the inconsistencies in the testimony and because the State failed to prove that he acted with premeditation. Id. at *13. This court held that the instruction on criminal responsibility was fairly raised by the evidence and that the evidence was sufficient to sustain the conviction because the proof showed that the defendant, who was armed, either shot the unarmed victim or aided one of his passengers in shooting the victim and shared in the requisite intent to harm the victim in retaliation for a prior fight. Id. at *12, 14.

Similarly, in Gale Marleen Krizka, the defendant argued that the trial court should not have provided an instruction on criminal responsibility because no other person responsible for the crime was charged, named in the indictment, or identified at trial. State v. Gale Marleen Krizka, No. E2007-02465-CCA-R3-CD, 2009 WL 856338, at *4-5 (Tenn. Crim. App. Mar. 26, 2009), perm. app. denied (Tenn. Aug. 17, 2009). The defendant also claimed the evidence was insufficient to support her conviction for second degree murder. Id. at *5. While this court acknowledged that there was "no direct proof offered at trial to show that another person was involved in the death of the victim," it held the proof showed that the defendant had mentioned enlisting the assistance of another person in harming the victim and that the circumstances of the killing made it unlikely that the defendant could have physically committed the crime alone, given that she weighed only 140 pounds and that the victim weighed over 300 pounds. Id. Moreover, the court held that the proof, though largely

circumstantial, established that the defendant had both a motive and an opportunity to kill the victim, would receive money if the victim died, had considered feeding the victim seafood to which he was extremely allergic in order to kill him, and was seen bleaching her carpets near the time of the victim's disappearance. Id. at *6. The evidence also showed that dried blood, matching the victim's DNA, was found on the carpet, walls, and furniture of the defendant's home. Id. Based on these cases, we conclude that the failure to name the principal in the indictment does not preclude Tipler from being held criminally responsible for the actions of another.

Finally, we must consider whether the evidence is sufficient to show that Tipler was criminally responsible for the offenses of attempted first degree murder, aggravated assault, and reckless endangerment. At trial, the State argued that Tipler was guilty of attempted first degree murder, aggravated assault, and reckless endangerment pursuant to a theory of criminal responsibility. "A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39-11-401(a) (Supp. 2012). An individual is criminally responsible for the conduct of another person if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" Id. § 39-11-402(2) (Supp. 2012).

At trial, the trial court gave the following instruction on criminal responsibility, which tracked the language in Tennessee Pattern Jury Instruction 3.01:

> CRIMINAL RESPONSIBILITY FOR CONDUCT OF ANOTHER
> The defendant is criminally responsible as a party to the offense(s) of
>
> | COUNT 1: | ATTEMPTED FIRST DEGREE MURDER |
> | COUNT 2: | AGGRAVATED ASSAULT |
> | COUNT 4: | RECKLESS ENDANGERMENT |
>
> if the offense(s) were committed by the defendant's own conduct, by the conduct of another for which the defendant is criminally responsible, or by both. Each party to the offense may be charged with the commission of the offense.
>
> The defendant is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the

offense, the defendant solicit(s), direct(s), aid(s), or attempt(s) to aid another person to commit the offense.

In deciding the criminal responsibility of the defendant, the jury may also take into consideration any evidence offered that the defendant attempted to thwart or withdraw from any of the offenses that followed from the original offense.

Before you find the defendant(s) guilty of being criminally responsible for said offense(s) committed by the conduct of another, you must find that all the essential elements of said offense(s) have been proven by the state beyond a reasonable doubt.

**1. Attempted First Degree Premeditated Murder.** Tipler argues that the evidence is insufficient to show that he was criminally responsible for the offense of attempted first degree murder. He also claims that the State provided insufficient evidence of premeditation. As support, he notes that the victim was wearing a gun holster at the time he was shot, that weapons were fired from both the porch and the street, and that the victim indicated his desire to invoke his Fifth Amendment privilege and later stated that "I really don't want to be up here at all" and "I don't remember anything from that night."

Pursuant to State v. Dickson, 413 S.W.3d 735, 744 (Tenn. 2013), we must consider the following issues in determining whether the evidence is sufficient to sustain Tipler's conviction for attempted first degree premeditated murder: (1) whether Tipler was criminally responsible for the acts of the unidentified shooter because Tipler promoted or assisted in the commission of the offense, or benefitted in the proceeds or results of the offense pursuant to Tennessee Code Annotated section 39-11-402(2); (2) whether the unidentified shooter intended to kill the victim and took a "substantial step" toward the offense for the purposes of the criminal attempt statute in Tennessee Code Annotated section 39-12-101(a)(3); and (3) whether the unidentified shooter acted with sufficient premeditation in his attempt to kill the victim within the meaning of Tennessee Code Annotated section 39-13-202(a)(1). Because the evidence in this case varies substantially from that in Dickson, we will consider factors (2) and (3) before considering issue (1), whether Tipler was criminally responsible for the acts of the unidentified shooter.

Because Tipler was convicted of attempted first degree premeditated murder, we will first consider whether the unidentified shooter intended to kill the victim and whether he took a "substantial step" toward the commission of this offense pursuant to the criminal attempt statute. As relevant in this case, a person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense, "[a]cts with intent to complete a course of

-9-

action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3) (Supp. 2012). "Conduct does not constitute a substantial step . . . unless the person's entire course of action is corroborative of the intent to commit the offense." Id. § 39-12-101(b) (Supp. 2012). "[T]he question of whether a defendant has taken a substantial step toward the commission of a crime sufficient to support a conviction for criminal attempt is necessarily a heavily fact-intensive inquiry determined by the specific circumstances shown in each individual case[.]" Davis, 354 S.W.3d at 733.

Here, when Tipler drove down Whitehall Street near the Eastgate Liquor Store, the man in the passenger seat told him to slow down, which he did, and then the two men started shooting. Tipler said the man on the front porch started shooting and the men in his car returned fire. It is well established that an actor's possession of materials to be used in the crime, at or near the scene of a crime, constitutes a substantial step toward the commission of the crime:

> "[W]hen an actor possesses materials to be used in the commission of a crime, at or near the scene of the crime, and where the possession of those materials can serve no lawful purpose of the actor under the circumstances, the jury is entitled, but not required, to find that the actor has taken a 'substantial step' toward the commission of the crime if such action is strongly corroborative of the actor's overall criminal purpose."

Dickson, 413 S.W.3d at 745 (quoting State v. Reeves, 916 S.W.2d 909, 914 (Tenn. 1996)).

The evidence established that the shooter or shooters got into Tipler's car with the intent to shoot the victim. These men directed Tipler to drive in a particular direction and then told him to slow down when he approached the victim. As Tipler slowed, the shooter fired several shots at the victim, who was standing on the front porch of his house. We conclude that the shooter's acts of carrying a loaded handgun and firing it several times at victim was corroborative of his intent to kill the victim. Therefore, we conclude that the shooter intended to kill the victim and took a "substantial step" in committing the offense of attempted first degree murder pursuant to the criminal attempt statute.

Next, we will consider whether there is sufficient evidence showing that the unidentified shooter acted with premeditation in firing upon the victim. Because an unidentified individual was the shooter, we must consider the shooter's conduct in determining whether there is sufficient proof of premeditation to support Tipler's conviction

for attempted first degree murder.  See id. at 746 (citing State v. Howard, 30 S.W.3d 271, 275-76 (Tenn. 2000)).

First degree murder is the premeditated and intentional killing of another person. T.C.A. § 39-13-202(a)(1) (Supp. 2012).  Premeditation is defined as "an act done after the exercise of reflection and judgment."  Id. § 39-13-202(d) (Supp. 2012).  This section further defines premeditation:

> "Premeditation" means that the intent to kill must have been formed prior to the act itself.  It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time.  The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Id.  The existence of premeditation is a question of fact for the jury to determine and may be inferred from the circumstances surrounding the offense.  State v. Young, 196 S.W.3d 85, 108 (Tenn. 2006); State v. Suttles, 30 S.W.3d 252, 261 (Tenn. 2000).  Factors that may support the existence of premeditation include, but are not limited to, the use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, the infliction of multiple wounds, declarations by the defendant of an intent to kill, lack of provocation by the victim, failure to aid or assist the victim, evidence of procurement of a weapon, preparations before the killing for concealment of the crime, destruction and secretion of evidence of the killing, and calmness immediately after the killing.  State v. Kiser, 284 S.W.3d 227, 268 (Tenn. 2009); State v. Leach, 148 S.W.3d 42, 53-54 (Tenn. 2004); State v. Davidson, 121 S.W.3d 600, 615 (Tenn. 2003); State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997).  This court has also noted that the jury may infer premeditation from any planning activity by the defendant before the killing, evidence concerning the defendant's motive, and the nature of the killing.  State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995) (citation omitted).

Viewing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence that the shooter acted with premeditation in firing shots at the victim. Because the shooter carried a loaded handgun on his person immediately prior to the shooting incident, a reasonable jury could have found that the shooter planned to use the weapon against the victim.  Although the victim was also armed in this case, the evidence at trial showed that the shooter opened fire on the victim first, which prompted the victim to return fire.  After the victim was hit by a bullet, the shooter failed to render aid.  Moreover, a reasonable jury could have found that the shooter was trying to avoid identification and prosecution for this offense by riding in Tipler's vehicle at the time he fired the gunshots. While there was no direct evidence of the shooter's motive, the victim had told Dawanica

McClellan the day of the shooting that she needed to leave his home for her own safety. Accordingly, there was sufficient proof that the shooter acted with premeditation when he fired upon the victim.

Finally, we must consider whether Tipler was criminally responsible for the acts of the shooter. In other words, we must determine whether "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, [Tipler] solicit[ed], direct[ed], aid[ed], or attempt[ed] to aid another person to commit the offense[.]" T.C.A. § 39-11-402(2). Under the theory of criminal responsibility, "an individual's presence and companionship with the perpetrator of a felony before and after the commission of an offense are circumstances from which his or her participation in the crime may be inferred." State v. Watson, 227 S.W.3d 622, 639 (Tenn. Crim. App. 2006) (citing State v. Ball, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998)). In this situation, "[n]o particular act need be shown, and the defendant need not have taken a physical part in the crime to be held criminally responsible." Id. (citing Ball, 973 S.W.2d at 293). To prove a defendant's guilt under the theory of criminal responsibility, the State must establish that the defendant "'knowingly, voluntarily and with common intent unite[d] with the principal offender[ ] in the commission of the crime.'" State v. Maxey, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting State v. Foster, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988)). Criminal responsibility for the actions of another person "requires that a defendant act with a culpable mental state, specifically, the 'intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense.'" State v. Carson, 950 S.W.2d 951, 954 (Tenn. 1997) (quoting T.C.A. § 39-11-402(2)). "A person acts with intent as to the nature or result of conduct when it is that person's conscious objective or desire to engage in the conduct or cause the result." Id. (citing T.C.A. § 39-11-302(a); Maxey, 898 S.W.2d at 757).

The evidence presented at trial does not show that it was Tipler's conscious desire to kill the victim in this case, that he acted in concert with the shooter, or that he was an active participant in the shooting. Tipler claimed in his statement to police that the two perpetrators approached him at a gas station and offered him fifteen dollars for him to drive them to Lane College. Tipler subsequently drove these men down Whitehall Street. When they got close to the victim's house, one of the perpetrators asked Tipler to slow down, and when Tipler complied, at least one of the perpetrators fired at least fifteen shots at the victim while the victim was standing on his front porch. When Deputy Moncher activated his siren and blue lights, Tipler engaged in a high speed chase to avoid capture. As Tipler was attempting to escape, he allowed one of the perpetrators and a woman by the name of Simone to get out of his vehicle. Deputy Moncher followed Tipler until he stopped at 117 or 119 Lockwood Street. Upon arriving at that address, Tipler jumped out of his vehicle without putting the vehicle in park, which caused his vehicle to roll back on Deputy Moncher's patrol car,

injuring the officer and allowing Tipler and the perpetrator to flee on foot. Although the State presented evidence of Tipler's acts during and after the shooting offense, it failed to present any evidence of Tipler's motive or plan to injure or kill the victim and failed to show that he was actively involved in the shooting incident. There was no evidence that Tipler was armed with a gun, fired the shots at the victim, or knew that the unidentified shooter intended to fire at the victim until the moment when the shooter told him to slow down. Moreover, according to the evidence, neither Tipler nor the victim knew each other, and the record was devoid of proof that Tipler knew the perpetrators prior to giving them a ride that night. Cf. State v. Brandy Lea Birdwell, No. M2009-00722-CCA-R3-CD, 2010 WL 3582489, at *5 (Tenn. Crim. App. Sept. 15, 2010), perm. app. denied (Tenn. Feb. 17, 2011) (holding that the defendant was criminally responsible for the felony murder and especially aggravated robbery offenses when she drove the assailants to the market in her truck, parked around the side of building while they shot the victim with the defendant's mother's gun, and then drove them around for several hours before taking them to a house in Madison).

While there is insufficient evidence to support a finding that Tipler was criminally responsible for the acts of the unidentified shooter pursuant to Code section 39-11-402(2), we conclude that the evidence is sufficient to support a conviction for facilitation of attempted first degree murder. A person facilitates a felony "if knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." T.C.A. § 39-11-403(a) (Supp. 2012). In other words, the State had to prove beyond a reasonable doubt that (1) Tipler knew that the shooter intended to commit the first degree premeditated murder of the victim, and (2) that Tipler knowingly furnished substantial assistance to the shooter in the commission of the offense. We note that "[a] defendant charged as a party may be found guilty of facilitation as a lesser included offense if the defendant's degree of complicity is insufficient to warrant conviction as a party." Id. § 39-11-403, Sentencing Comm'n Comments.

Viewing the evidence in the light most favorable to the State, we conclude that the evidence is sufficient to sustain Tipler's conviction for facilitation of attempted first degree murder. Although the record shows that Tipler did not share in the shooter's intent to premeditatively kill the victim, he should have been aware of the shooter's intent to kill the victim when the shooter told him to slow down and pulled out his gun just before firing the shots. Moreover, after the firing of the first shot, Tipler was certainly aware that the shooter intended to commit a felony against the victim, and he knowingly furnished substantial assistance by maintaining a slow speed, thereby enabling the shooter to fire at least fourteen additional shots at the victim. Tipler's actions as the shots were fired, as well as his actions following the shooting, including the fact that he engaged in a high speed chase with an officer immediately after the incident, lead to an inference that he was not wholly innocent

of the crimes. Although Tipler stated that he was scared when the officer activated his lights, the record was devoid of any evidence that Tipler had been threatened by the men in his car or was under duress when he furnished substantial assistance to the shooter. These pieces of circumstantial evidence, when considered together, support a conviction for facilitation. Accordingly, Tipler's conviction for attempted first degree murder is modified to a conviction for facilitation of attempted first degree murder.

**2. Aggravated Assault.** Tipler also argues that the evidence is insufficient to establish that he was criminally responsible for the aggravated assault offense. To obtain a conviction for aggravated assault offense in this case, the State had to prove beyond a reasonable doubt that Tipler intentionally or knowingly caused bodily injury to the victim by the use of a deadly weapon. See T.C.A. § 39-13-102(a)(1)(A)(ii) (Supp. 2012) (amended July 1, 2013). Although the evidence is insufficient to support a conviction for aggravated assault, it is sufficient to support a conviction for facilitation of aggravated assault because Tipler's intent fell short of the intent required for criminal responsibility. See id. § 39-11-403(a). The proof presented in this case showed that Tipler had no plans to injure the victim in this case and was unaware of the shooter's intent to injure the victim until the moment when the shooter pulled out his gun and asked Tipler to slow down his vehicle. The fact that Tipler did not know the identity of the victim does not mean that the evidence is insufficient to sustain his conviction for facilitation of aggravated assault. See State v. Alvin Brewer, No. W2012-02281-CCA-R3-CD, 2014 WL 1669807, at *24 (Tenn. Crim. App. Apr. 24, 2014) (holding that the evidence was sufficient to sustain defendant Boyland's convictions for facilitation of aggravated assault because "a reasonable juror could have . . . concluded that defendant Boyland knew that defendant Brewer was armed with a gun and that he intended to employ that gun against any individuals he encountered in the upstairs of the home"). Tipler knowingly provided substantial assistance to the shooter by slowing his vehicle as the shooter pointed his gun out of the window and fired upon the victim. He also assisted the shooter in evading the police. Accordingly, the evidence was sufficient for a reasonable jury to find that Tipler, knowing that the shooter intended to commit an aggravated assault against the victim, provided substantial assistance to him in the commission of that offense. Accordingly, Tipler's conviction for aggravated assault is modified to a conviction for facilitation of aggravated assault.

We also note an error in the judgment forms in this case. Here, the trial court merged Tipler's conviction for aggravated assault with his conviction for attempted first degree murder. The court entered two separate judgment forms for these convictions. The judgment form for the aggravated assault conviction shows the jury's finding of guilt, specifies a specific sentence of five years served concurrently with the twenty-year sentence for the attempted first degree murder conviction, and states that this conviction is merged with the attempted first degree murder conviction. Although the trial court in this case entered two

separate judgment forms for the merged convictions, this court has stated that the proper procedure is to enter only one judgment form for the surviving conviction with a notation that the other conviction is merged. See State v. Jose L. Hidalgo, No. M2011-01314-CCA-R3-CD, 2013 WL 1197726, at *11 (Tenn. Crim. App. Mar. 26, 2013) ("[T]his court has stated that the proper practice is to enter only one judgment form with a notation therein that the alternative count is merged."); State v. Cecret C. Williams, No. M2009-01739-CCA-R3-CD, 2010 WL 4674300, at *9 (Tenn. Crim. App. Nov.17, 2010) ("In a case such as this one, when two offenses merge, it is proper to enter only one judgment of conviction."); State v. Zachary v. Henning, No. W2005-00269-CCA-R3-CD, 2007 WL 570553, at *4 (Tenn. Crim. App. Feb. 23, 2007) ("On remand, the trial court should vacate the judgments of conviction of aggravated assault, including the sentence, and of theft and amend the judgment of conviction of aggravated robbery to reflect the merger of both the findings of guilt of aggravated assault and theft."). Therefore, we remand this matter to the trial court for entry of a single judgment reflecting the merger of the modified conviction for facilitation of aggravated assault with the surviving conviction for facilitation of attempted first degree murder.

**3. Reckless endangerment.** Finally, Tipler contends that the evidence is insufficient to show that he was criminally responsible for the offense of reckless endangerment. A person commits the offense of reckless endangerment "who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a) (Supp. 2012). Reckless endangerment by discharging a firearm into a habitation is a Class C felony. Id. § 39-13-103(b)(3) (Supp. 2012). We again conclude that although the evidence is insufficient to support a conviction for reckless endangerment, it is sufficient to support a conviction for facilitation of reckless endangerment by discharging a firearm into a habitation. As we previously noted, Tipler slowed the speed of his vehicle as the shooter fired upon the victim. Dawanica McClellan and Lebresee Jeter testified that immediately following the shooting incident they observed bullet holes in the door, floor, and roof of the victim's home. The proof is sufficient for a jury to infer that Tipler, knowing that the shooter intended to fire at the victim while he was standing on his front porch, provided subtantial assistance to him during the commission of this offense. Accordingly, Tipler's conviction for reckless endangerment by discharging a firearm into a habitation is modified to a conviction for facilitation of reckless endangerment by discharging a firearm into a habitation. We note that the judgment form for this conviction erroneously showed that Tipler's indicted offense and conviction offense were reckless endangerment with a deadly weapon, a Class E felony, rather than reckless endangerment by discharging a firearm into a habitation, a Class C felony. Because we have modified Tipler's conviction to facilitation of reckless endangerment by discharging a firearm into a habitation, the amended judgment form should show the indicted offense as reckless endangerment by discharging a firearm into a habitation, a Class C felony, and the

conviction offense of facilitation of reckless endangerment by discharging a firearm into a habitation, a Class D felony. See id. § 39-11-403(b) (Supp. 2012).

**B. Vandalism.** Tipler also argues that the evidence is insufficient to sustain his misdemeanor vandalism conviction. He claims there was no evidence showing that he knowingly hit a police car with his own vehicle because the proof at trial showed that his vehicle rolled downhill into the patrol car when he and the passenger in his car abandoned it. In order to convict a defendant of Class A misdemeanor vandalism, the State must establish that the defendant knowingly caused damage or destruction to any real or personal property of another without the owner's effective consent and that the damage to the property is $500 or less. Id. §§ 39-14-408(a), (c); 39-14-105(a)(1) (Supp. 2012). Here, a reasonable jury could have found that Tipler, who chose to stop his car at the top of a steeply inclined driveway, intended for his car to roll backward into the officer's vehicle because it gave him an opportunity to escape. The evidence is sufficient to sustain the vandalism conviction.

**II. Failure to Charge Natural and Probable Consequences Rule.** First, Tipler contends that although the trial court instructed the jury on facilitation and criminal responsibility, it denied his right to due process and a fair trial when it failed to instruct the jury to affirmatively determine that he was criminally responsible before determining whether he was guilty of the underlying charges of attempted first degree murder, aggravated assault, or reckless endangerment. He also asserts that the verdict form did not require the jury to determine whether he was criminally responsible for the actions of another or to determine whether each element of the offenses had been proven beyond a reasonable doubt before "com[ing] to an ultimate conclusion on the Counts as alleged in the Indictment." Second, Tipler argues that the trial court erred in not instructing the jury on the natural and probable consequences rule as a part of the instruction on criminal responsibility. We conclude that Tipler is not entitled to relief on these issues.

We will first consider Tipler's challenges to the jury instructions and the verdict form. We have already concluded that the trial court did not err in its instruction to the jury regarding criminal responsibility because it substantially tracked the language in Tennessee Pattern Jury Instruction 3.01. Moreover, the record shows the jury charge fairly submitted the legal issues and did not mislead the jury as to the appropriate law. See Majors, 318 S.W.3d at 864-65. Furthermore, we see nothing improper about the verdict forms in this case. The verdict form listed the charged offense for each count, gave the jury the option of finding Tipler not guilty or guilty, and allowed the jury to set the amount of the fine and did the same for each of the charged lesser included offenses. For these reasons, we conclude that neither the jury instructions nor the verdict forms were improper in this case.

Second, Tipler argues that the trial court erred by not instructing the jury on the natural and probable consequences rule as a part of the instruction on criminal responsibility. He claims that his conviction for attempted first degree murder should be reversed because there was no evidence showing that he knew what was going to happen as he drove down Whitehall Street. Although the natural and probable consequences rule is not explicitly included in the code, it nevertheless "survived the common law into the criminal responsibility statutes[.]" Howard, 30 S.W.3d at 276. This rule "underlies the doctrine of criminal responsibility and is based on the recognition that aiders and abettors should be responsible for the criminal harms they have naturally, probably and foreseeably put into motion." Id. (citing Carson, 950 S.W.2d at 954-55; Key v. State, 563 S.W.2d 184, 186 (Tenn. 1978); State v. Grooms, 653 S.W.2d 271, 275 (Tenn. Crim. App. 1983)). The natural and probable consequences rule "extends the scope of criminal liability to the target crime intended by a defendant as well as to other crimes committed by a confederate that were the natural and probable consequences of the commission of the original crime." Id. (citing Carson, 950 S.W.2d at 954-55).

Relying on State v. Howard, 30 S.W.3d 271 (Tenn. 2000), Tipler claims that the jury in his case was never given the opportunity to determine whether the attempted first degree murder offense was the natural and probable consequence of the other offenses. In Howard, the State contended that the defendant was criminally responsible for the premeditated murder of the victim because the murder was a natural and probable consequence of the especially aggravated robbery. Id. at 275. The defendant argued that the natural and probable consequences rule could not be used with the criminal responsibility statutes to impose criminal liability for premeditated murder. Id. at 276. The Tennessee Supreme Court held that in order to impose criminal liability based on the natural and probable consequence rule, the State was required to prove beyond a reasonable doubt and the jury must find the following: "(1) the elements of the crime or crimes that accompanied the target crime; (2) that the defendant was criminally responsible pursuant to Tennessee Code Annotated section 39-11-402 [for the crime or crimes other than the target crime]; and (3) that the other crimes that were committed were natural and probable consequences of the target crime." Id. The court noted that although the trial court instructed the jury that in order to convict the defendant of premeditated murder, it had to find that the State proved beyond a reasonable doubt the elements of premeditated murder and that the defendant was liable for the murder based on the theory of criminal responsibility, it failed to instruct the jury that it had to find that the State had proven beyond a reasonable doubt that the premeditated murder was a natural and probable consequence of the especially aggravated robbery. Id. at 276-77. Consequently, the court reversed the defendant's conviction for premeditated murder and remanded the case for a new trial on that charge "because the jury was not properly instructed on the natural and probable consequences rule and did not have the opportunity to determine whether this element was proved[.]" Id. at 277.

-17-

Although Tipler argues that his conviction for attempted first degree murder should be reversed because the natural and probable consequences rule was not charged, we disagree. In Tipler's case, unlike in Howard, the instruction on the natural and probable consequences rule was not warranted by the evidence. See State v. Richmond, 90 S.W.3d 648, 657 (Tenn. 2002) (holding that "a trial court's failure to charge the natural and probable consequences rule when warranted by the evidence is constitutional error" (citing Howard, 30 S.W.3d at 277 n.6)). In Howard, the State sought to convict the defendant of first degree premeditated murder as a natural and probable consequence of the defendant's commission of the especially aggravated robbery offense. However, in Tipler's case, the State sought to convict him of attempted first degree murder, aggravated assault, and reckless endangerment under a theory of criminal responsibility based on the unidentified shooter's act of firing upon the victim. In Howard, the especially aggravated robbery offense was the clear target crime intended by the defendant while in Tipler's case, there was no clear target crime intended by him. Moreover, even if the attempted first degree murder offense could be considered the target crime in Tipler's case, "the natural and probable consequences rule instruction is required only for incidental crimes and not for the target crime." State v. Winters, 137 S.W.3d 641, 659 (Tenn. Crim. App. 2003) (citing State v. Mickens, 123 S.W.3d 355, 359 (Tenn. Crim. App. 2003)). Therefore, no instruction on the natural and probable consequences rule was required. In any event, we have already concluded that Tipler lacked the requisite intent to be criminally responsible for the offenses in this case and have modified his convictions to facilitation of attempted first degree murder, facilitation of aggravated assault, and facilitation of reckless endangerment. For these reasons, Tipler is not entitled to relief.

## CONCLUSION

We remand to the trial court for entry of a judgment reflecting the modified conviction for facilitation of attempted first degree murder, which should also reflect the merger of the modified conviction for facilitation of aggravated assault with the conviction for facilitation of attempted first degree murder, for entry of a judgment reflecting the indicted offense of reckless endangerment by discharging a firearm into a habitation and the modified conviction for facilitation of reckless endangerment by discharging a firearm into a habitation, and for resentencing. We affirm the trial court in all other respects.

_____
CAMILLE R. McMULLEN, JUDGE

-18-